| | |
|---|---|
| 54 | 441 |
| 86 | 768 |
| 88 | 277 |
| 54 | 441 |
| 97 | 565 |
| 54 | 441 |
| 100 | 115 |
| 54 | 441 |
| o121 | 707 |

JOSEPH CALLOWAY, executor, *et al.*, plaintiffs in error, *vs.* THE PEOPLE'S BANK OF BELLEFONTAINE *et al.*, defendants in error.

1. A power in a mortgage to the mortgagee to sell the property mortgaged on the failure of the mortgagor to pay the debt, at its maturity, is a lawful power under the laws of this state, and is irrevocable; and if the mortgage be duly recorded, it may be exercised as against the mortgagor, and those claiming under him, either by deed, or as purchasers at a judicial sale, under process to which the mortgage is superior in its lien.

2. If there be no time, place or terms of sale, prescribed in the power of sale, the sale ought to be as provided by law, in cases of trustees' sales, but if there be a provision that the mortgagee shall advertise the time, place and terms of sale, in a prescribed newspaper, this is in effect an authority to the mortgagee to fix the time, place and terms.

3. Where one in failing circumstances made a mortgage, with a power of sale, on which he procured money to be loaned to him, and the power of sale provided that if the property brought at the sale more than the debt, the surplus was to be returned to the mortgagor:

*Held*, that this was not such a reservation of a trust or benefit to the mortgagor as made the mortgage and power of sale fraudulent, even if the mortgagee knew that the mortgagor was of doubtful solvency. And a charge of fraud, based on such facts, does not make out a *prima facie* case.

Mortgages.   Powers.   Judicial sale.   Debtor and creditor. Fraud.   Before Judge HILL.   Bibb county.   At Chambers. April 29th, 1875.

The People's Bank of Bellefontaine, and other creditors of one A. L. Maxwell, filed their bill against Joseph Calloway, as executor of Thomas H. Calloway, deceased, making substantially the following case:

At the April and October terms, 1873, of Bibb superior court, the complainants obtained judgments against said A. L. Maxwell for about $10,000 00. Said Maxwell then owned lands and personalty in the counties of Bibb, Jones and Twiggs, the former of the value of $30,000 00, and the latter of the value of $10,000 00. In the early ,part of the year 1874, the executions based on these judgments were levied on the aforesaid lands, and the same were sold at sheriff's sale and purchased by Lanier & Anderson, the attorneys for the plaintiffs in *fi. fa.* At the time of said sale there was claimed to be in existence a mortgage, or other instrument, previously executed by said Maxwell, on said lands, in favor of one Thomas H. Calloway and C. H. McGehee, of the state of Tennessee. Calloway has died and is represented by the defendant, Joseph Calloway, as his executor. Said defendant is now advertising said property for sale, under a power contained in said instrument, for the purpose of paying a pretended debt of $30,000 00, alleged to be due to said Calloway and McGehee. Before said lands were bid off as aforesaid, it was agreed between Lanier & Anderson and said Maxwell, that if they should purchase the same, the latter should have the privilege of redeeming the same by paying said judgments, or by making satisfactory arrangements in reference thereto. Under this agreement, and. believing Maxwell would perform his part of it, said attorneys did not enter into formal possession of said property. After the lapse of several months Maxwell wrote to said attorneys that he was unable to do anything, and that they must act as they deemed best in reference to said property. Said attorneys then commenced an examination into the condition of the same. They discovered that Maxwell, since said sheriff's sale, had allowed said lands to be used for farming purposes by various persons (named,) and had collected no rents therefor; that he had sold large quan-

Calloway *et al. vs.* The People's Bank of Bellefontaine *et al.*

tities of valuable timber and large tracts of land to divers persons (named,) who had not yet paid for the same on account of doubt about the title; that the personalty had been sold in the same manner; that Maxwell had abandoned the property and gone to the state of Tennessee.

At the time of the execution of the aforesaid mortgage Maxwell was insolvent. It was made for the purpose of defrauding his creditors of all of his property, which was located in Georgia. A benefit was therein reserved to himself, which made it void. It was made for the purpose of preferring creditors and of securing pre-existing debts.

Complainants pray the writ of injunction, to be directed to said Joseph Calloway restraining him from effecting sale of any part of said land until the further order of said court. Also, to be directed to the other defendants, (named,) restraining them from further trespassing upon said land, from cutting timber, etc., and from making payments upon purchases made by them except under the order of the court. They pray the appointment of a receiver to take charge of all of said property, real and personal, to collect the rents, to take an account of the timber moved from said lands, to collect amounts due by railroads and other persons therefor, to collect purchase money due, to make contracts for the letting out said lands for farming purposes, and for the discharge of such other duties as the court may impose on him. They pray that said pretended mortgage may be brought into court and its validity, amount due thereon, and priority determined. They pray that their judgments may be satisfied out of the proceeds of said property, and that it may be sold at such times and places, in such quantities and upon such terms as may be deemed best. Waiving discovery, they pray the writ of subpœna, etc.

To the bill was attached, as an exhibit, the following advertisement :

"VALUABLE LANDS FOR SALE.

"By virtue of the power vested in me by a mortgage executed by A. L. Maxwell on the 10th day of April, 1872, and recorded in the clerk's office

of Jones county, in book T of deeds, pages 173 and 174, on the 24th day of April, 1872, and recorded in the clerk's office of Twiggs county, Georgia, in book O, pages 643, 644 and 645, on the 6th day of May, 1872, I will, on Thursday, the 18th day of May, 1875, and from day to day until completed, at Griswoldville station, on the Georgia Central Railroad, near the line between the counties of Jones and Twiggs, state of Georgia, expose to public sale to the highest bidder, for cash in hand, the following described lands, situated in the counties of Jones and Twiggs, or a sufficiency thereof to pay the debts and interest secured by said mortgage, and all costs, to-wit:

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

" These lands are known as the Griswoldville lands, lying from six to ten miles from the city of Macon. The Central Railroad runs through them. Upon them are very excellent improvements, a splendid residence, and barns, and outhouses unsurpassed. Title in fee simple will be made to the purchaser and purchasers, as specified in said mortgage. Said lands may be sold in lots or together, as I may be able to realize the best price, and if necessary, to sell all for the purposes of said mortgage.

\*　　\*　　\*　　\*.　　\*　　\*　.　　\*　　\*　　\*　　\*

" Said lands will be sold for the benefit of the estate of Thomas H. Calloway and Charles M. McGehee, beneficiaries in said mortgage.

"JOSEPH CALLOWAY,

" *Executor of Thomas H. Calloway, deceased.*

" February 16, 1875."

The defendant, Joseph Calloway, demurred to said bill. He also answered, in brief, as follows: Knows nothing about most of the matters set forth in said bill. Upon the death of his father, the testator, he and his brother Luke L. Calloway, the executors, discovered that Maxwell was indebted to the testator about $12,000 00. Failing to obtain a settlement from him, they filed a bill for account in the chancery court at Knoxville, Tennessee. Pending this litigation he proposed to pay them $6,000 00 in settlement of the demand, which they agreed to accept. Not having an immediate use for the money, they consented to loan it to Maxwell, together with an additional $10,000 00, upon his giving abundant security by mortgage. Accordingly, on the 10th day of April, 1872, he executed his note for $16,000 00, together with the mortgage referred to in said bill. The contract between Maxwell and the mortgagees was, that in case he failed to pay the sums of money as provided in said mortgage, the latter were not to be delayed by the necessity of foreclosing in the courts,

but that either one of them might sell all of said lands, or a sufficiency thereof to pay all of said indebtedness, after advertising the time, place and terms of sale, for the space of ninety days in one or more newspapers published in the city of Macon, and that the sale should be for cash in hand.

At the time of the execution of said mortgage, Maxwell was indebted to McGehee in the sum of $3,600 00. The latter let him have an additional $5,000 00, making $8,600 in all, for which a note was given, secured by said mortgage.

Luke H. Calloway has ceased to be an executor of the estate of testator, and this defendant is now the sole representative. He is simply proceeding to enforce said mortgage as provided therein.

To the answer was attached a copy of the mortgage, as follows :

" This indenture made and entered into this 10th day of April, 1872, by and between A. L. Maxwell, of the city of Macon, state of Georgia, of the first part, and Joseph Calloway and Luke Calloway, executors of the last will and testament of Thomas H. Calloway, deceased, late of Cleveland, Braddy county, Tennessee, and Charles McGehee, of the city of Knoxville, Knox county, Tennessee, of the second part, witnesseth, that for and in consideration of the sum of $5 00 in hand paid to the said Maxwell, party of the first part, and the other good and valuable consideration hereinafter expressed, the receipt of which is hereby acknowledged, the said Maxwell has this day bargained and sold, and doth by these presents, bargain, sell, transfer and convey and confirm unto the said Calloway's executors, etc., and said McGehee, their heirs and assigns forever, in fee simple, the following described lands and the improvements thereon, situate in the counties of Jones and Twiggs, state of Georgia, to-wit :   *   *   *

" But this conveyance is made for the following uses, trusts and purposes, and none other, that is to say : that, whereas the said Maxwell is indebted to the said Joseph and Luke Calloway, executors, in the sum of $16,000 00, by note bearing even date herewith, and due one year from date, and

bearing interest from date at ten per cent.; and to said Mc-Gehee in the sum of $8,600 00, by note bearing even date herewith, and bearing interest at ten per cent. from date, due one year after date, and to secure the prompt payment of both of said notes, together with the interest thereon accruing, this deed of mortgage is this day made. Now, if the said Maxwell pay, or cause to be paid, said two notes with the interest thereon, and the cost of this proceeding at the maturity thereof, together with any additional sum of money that may be furnished to said Maxwell by the said Calloway's executors on this security, then and in that case, all said land hereby conveyed shall revert and vest in the said Maxwell in fee; but in case said sums of money and interest here secured, and intended to be secured, are not entirely paid at the maturity of said notes, then the said Joseph Calloway and Luke L. Calloway, executors, etc., and Charles M. McGehee, or either one of them, acting for himself and the others, or their representatives or heirs, may sell off said land, or a sufficiency thereof, to pay all of said indebtedness and interest, and may sell the same in lots separately, or several lots together, as he or they may be able to realize the best prices therefor, or all together, if necessary to sell to pay said indebtedness, after advertising the time, place and terms of sale for the space of ninety (90) days, in one or more newspapers published in the city of Macon, Georgia, and said sale shall be made for cash in hand; and said Calloway's executors, etc., and said Mc-Gehee, or any one of them, acting in the premises for himself and the others, shall make the purchaser or purchasers of said land, a title in fee simple to said land so sold by them or either of them as herein provided, thereby divesting out of said Maxwell all right, and title and equity that he may have in said land, and vest the same in the purchaser or purchasers, as the case may be, after satisfying in full said notes and interest, and the charges of this proceeding and costs of sale, together with any other sum that may be advanced to said Maxwell by either of said parties of the second part hereto;

if anything still remains in the hands of said beneficiaries, or either of them, the same will be paid to said Maxwell.

"In testimony whereof I, the said Maxwell, do hereunto subscribe my name and affix my seal, this the day and date first above written."

Recorded in the clerk's office of Twiggs county on May 6th, 1872.

Recorded in the clerk's office of Jones county on April 24th, 1872.

The injunction was granted as prayed for as against the defendant Calloway, executor, and the hearing of the motion as to the other defendants was continued. To this ruling, Calloway, executor, excepted.

D. A. WALKER, for plaintiff in error.

LANIER & ANDERSON, HILL & HARRIS, for defendants.

McCAY, Judge.

1. The decisions of this court in 1 *Kelly*, 176; 21 *Georgia*, 408; 35 *Ibid.*, 344; 7 *Ibid.*, 184, and the provision of the Code, section 1954, whilst they all are to the effect that a mortgage in this state conveys no title, no estate, yet they, none of them, go to the extent that the mortgagee has no *interest* in the thing mortgaged. Indeed, there is nothing in these decisions as to the nature of a mortgage, except, perhaps, as to the remedy of the mortgagee, that is different from the views of courts of equity in England, as to the nature of a mortgage. In Addison on Contracts, 297, it is said that "a court of chancery regards a mortgage as a mere security for the payment of a debt. The mortgagor is considered in equity the owner of the estate. This equitable interest in the land is denominated the equity of redemption, and is, in truth, the mortgagor's old estate unaffected in equity by the legal forfeiture, but encumbered with the lien of the pledge. There may be a seizin of it just the same as of any other estate. It may be devised, granted, mortgaged, or en-

tailed with remainders, and it will follow the same line of descent, as if no mortgage had been made." And he refers to numerous authorities to sustain this view. This court intended, doubtless, nothing more than this, when they say that a mortgage conveys no title in this state. Our blended system of law and equity, makes of a mortgage what it, in fact, is in practice, notwithstanding the formal rules of law. Neither this court, nor the Code, has said that the mortgagee has no interest. The language is, it passes no title. This was true in equity in England, and yet a mortgagee was constantly recognized as as having an interest, and an interest, too, in the land. So far as that interest was concerned, he was treated as a purchaser, and not as a general creditor, even by judgment. He could restrain the mortgagor from waste: 3 Atk., 723 ; *Ibid.*, 210. And this is doubtless true under our law. If he took his mortgage without notice of a prior title, he was, and is treated as a purchaser: Code, sections 1956, 1957. He may prevent the removal of personal property mortgaged, and require bond even of a purchaser at public sale: Code section 1968. Indeed, we know of hardly any right which a mortgagee had in equity in England that he has not here with a mortgage drawn to meet his case. It must be noticed that our Code does not negative any limitation or right which the parties may put in a mortgage. It simply defines what a mortgage is, and says, a mortgage, to-wit: a contract containing the terms specified, conveys no title. It does not say that the parties may not add to these terms other terms ; that they may not stipulate who shall have the possession, and how the pledge may be enforced. The truth is, nothing more was intended, as we have said, than to declare that in this state a simple mortgage was not a title on condition, as it was held in the English common law courts, but that it was what the English chancery court held it to be, a security, a pledge for the payment of money or other liability ; what indeed it, in fact, is even in England, since the mortgagor may always make it this by appeal to the chancery court. This section of the Code does not cover, say a deed absolute on its face,

with a parol condition, or even a written condition as a separate instrument. Is not *that a title,* so far as an innocent purchaser is concerned? Nor does it cover any of the cases of trust deeds, with conditions of sale and payment, as assignments for benefit of creditors, etc. Nor is there anything to prevent a power of sale. That is more than a mortgage, and does not come within the definition. We see nothing in the Code to limit the power of contracting as is contended for. Men have a right to do with their own as they will, and the law ought not to be construed to limit that right, unless it be very plain. " *Consensus facit legem,*" is one of the most ancient and universal maxims of the law. Since it is not the object of society to limit men in the disposition they see fit to make of their own property, unless some decided public good is to be attained. This court decided in the case of *Ross vs. Vason,* 37 *Georgia,* 66, that a power of sale might be attached to a mortgage in this state, and we see no reason to reverse it. It is in accord with the rulings of the English chancery courts, where a mortgage is just what it is here: 2 Sugden on Vendors, 188; 2 Spence E., 634; 36 Penn., 151; 2 Story Eq., 1027; Perry on Trusts, 302, etc. The idea is, we think, a fanciful one, that such a power is not coupled with an interest. The mortgagee *has,* as we have seen, an interest, and an interest in the thing. It is pledged to him; he is a purchaser of that interest, and a court of equity will protect him in it, and will protect it for him. We see nothing in this declaration of the Code, that a mortgage is only a security; that negatives the idea that a power to sell, in a mortgage, is a power coupled with an interest. The two ideas are just as consistent and harmonious as the idea of the English chancery court as to the nature of a mortgage, was with a power of sale. Indeed, it is mainly in chancery courts, all of which treat a mortgage as only a security, and uniformly recognize the property to belong to the mortgagee, that the whole doctrine of powers to sell, attached to a mortgage, is expounded and announced. We are clear, therefore, that

Calloway *et al. vs.* The People's Bank of Bellefontaine *et al.*

this is a good power of sale, and that it may be exercised according to its terms, fairly and honestly pursued.

2. We recognize the rule that such powers are to be strictly pursued, and to be honestly and fairly exercised. It is true, too, that if no time, place or manner be pointed out in the deed, that the mode ordinarily pointed out by law for public sales ought, in our judgment, to be pursued. This is in accord with the spirit of our law as indicated by the provisions for executors and trustees: Code, sections 2328, 2567. This deed clearly contemplates a public sale. It fixes the time, it provides for the advertisement and fixes the time of publication; it leaves nothing open but the place; but in effect it also covers that. To effect the sale, as contemplated, of these numerous lots in the two counties in which they lie, at the court-house of each county, would require two sales. It is plainly contemplated there shall be but one. The authority also is express, to sell in one body if it be thought best. This would be impossible if the sale were to be at the two court-houses. There is, therefore, in effect, no necessary detail left undetermined by the power itself. We are constrained to say that the advertisement, as to the day of sale, is not fixed and certain. There is an evident mistake. The day of the week and the day of the month are not coincident; which is the day intended? As, however, the day is past and a new day must be fixed, we think that mistake is now immaterial.

3. The charge of fraud is entirely too vague and indefinite. No facts are stated. There is nothing fraudulent in what is stated. One, even an insolvent, may *bona fide* make a mortgage, especially a mortgage to secure a debt then contracted. The surplus in such a case is no benefit to himself. The land is subject to his creditors: Code, section 1952; 47 *Georgia*, 82. On the whole, we think the injunction ought not to have been granted. The charges in the bill make out no equitable ground for its use, and we reverse the judgment.

Judgment reversed.