MUTUAL LOAN & BANKING CO. *v.* HAAS *et al.*

1. Where a debtor executed to a creditor a mortgage upon realty to secure a debt, and therein gave to the creditor a power of sale to be exercised on default of payment, the sale to be had at public outcry before the court-house door and after advertisement, such power became a part of the security, and being conferred for the purpose of effectuating the same, was not revocable, either by the mortgagor or by the rendition of a judgment against him in favor of another creditor. Where on default of payment the mortgagee exercised the power by selling the land, this was equivalent to a sale under a foreclosure of the mortgage by a court of competent jurisdiction, and a bona fide purchaser at the sale obtained title free from the lien of judgments junior to the mortgage though rendered before the exercise of the power.

2. The mortgagee may himself purchase at such a sale, when authority to do so is expressly conferred upon him in the mortgage.

Argued January 6,—Decided January 21, 1897.

Levy and claim. Before Judge Lumpkin. Fulton superior court. September term, 1895.

An execution in favor of the Mutual Loan and Banking Company was levied upon realty which was claimed by Jacob Haas, Morris Adler and Isaac Liebman. It was conceded that the rulings of the court upon questions of law would control the result; and a verdict for the claimants was directed. Plaintiff excepted. It appears, that on August 11, 1890, the defendant in execution, Mrs. S. J. Handy, made to Haas a mortgage upon the property in

dispute, to secure the payment of her promissory note for $12,000 principal, together with ten semi-annual interest coupon notes of $480 each, the principal to fall due at five years. This mortgage contained the following among other stipulations:

"Said principal note stipulates, that should any of said interest not be paid when due, it shall bear interest from maturity at the rate of eight per cent. per annum, as agreed in said interest notes; and that upon failure to pay any of said interest at maturity, said principal sum and accrued interest shall, at the option of the holder thereof, become due and collectible at once, time being of the essence of this contract. . . . This conveyance is made to secure the payment of said principal and interest notes, according to all of the stipulations and conditions therein expressed, and the performance of all the covenants herein set out. . . . Should I default in the payment of said principal note at maturity, or in the payment of any of said interest notes as they become due, . . . then upon such failure or failures as hereinbefore stated, the whole of said indebtedness with accrued interest shall, at the option of the holder thereof, immediately become due; and thereupon said Jacob Haas, his heirs and assigns, attorneys, agents or representatives thereunto duly authorized, shall have the right without notice to enter into and upon all and singular the premises hereby granted, and collect the rents and revenues thereof, and to sell and dispose of the same at public outcry at the court-house door of Fulton county, after advertising the same . . ; and thereupon said Jacob Haas and his assigns or his authorized agents may sell said property to the highest bidder for cash, and in his or their own name, or as the agent or attorney of any person or persons to whom said notes may have been transferred, become the purchaser, and to execute all necessary deeds and instruments of conveyance to Jacob Haas or to such other person or persons as may become the purchaser or purchasers; and for this purpose said Jacob Haas, his agents, attorneys and assigns, are hereby constituted my agent and attorney in fact, with full authority to carry into effect the provisions of this mortgage; and the recitals on the face of any such convey-ance shall be presumptive evidence that all preliminary acts

prerequisite to said sale and deed were in all things duly complied with. Out of the money arising from said sale said company(?) is authorized to retain the principal and interest due up to that date, together with all costs, and charges for advertising, and commissions for selling said property, and ten per cent. on the amount of such indebtedness as attorney's fees, rendering any overplus to me, my heirs, executors, administrators or assigns; and such sale so made shall forever be a perpetual bar both in law and equity against me, my heirs, executors, administrators, and all other persons claiming said property or any interest therein by or through me, them, or any of them  .  .  ."

Prior to May 1, 1894, Mrs. Handy defaulted in the payment of one or more of the interest coupon notes; and on that day, after proper advertisement according to the terms of the mortgage, the property was sold by Haas under the powers therein given, and was purchased by him and Adler, who then owned an interest in the mortgage. Haas made to himself and Adler a deed to the property, as attorney in fact for Mrs. Handy, in pursuance of the sale. On May 9, 1894, she executed an instrument whereby she acknowledged herself to be the tenant of Haas and Adler, of the premises in dispute, agreeing to pay them one dollar for the use of certain rooms therein for ten days, and then to yield possession of said rooms to them; hereby turning over the remainder of the premises to them "under their deed from me by Jacob Haas as my attorney in fact." Before the expiration of the ten days she did deliver possession of said rooms to Haas. On May 15, 1894, Haas and Adler conveyed by deed to Liebman, recorded on the next day, a third undivided interest in the premises in dispute.

The plaintiff's execution against Mrs. Handy was dated February 2, 1894, and was entered on the general execution docket the same day. It was founded upon a general judgment rendered on January 29, 1894. It was levied on the premises in dispute June 4, 1894.

The deed of May 1, 1894, made in pursuance of the sale

under the power contained in the mortgage, is from "Mrs. S. J. Handy, by Jacob Haas, her attorney in fact," to Jacob Haas and Morris Adler. It recites the execution and delivery of the mortgage, certain material stipulations therein (as before set out), the default in the payment of interest and in other respects noted, and the making of the sale, after advertisement, under the power given by the mortgage, to Haas and Adler as the highest bidders, for $13,000. Plaintiff objected to its reception in evidence, on two grounds: (1) That Haas, being the attorney in fact for Mrs. Handy, could not become the purchaser of the property at his own sale, and said sale was void for that reason. (2) That he could not have sold the property free from the lien of plaintiff's fi. fa., which antedated the sale; and could have sold no greater interest than Mrs. Handy herself could have sold; nor could the lien of said fi. fa. be defeated by such sale. The objection was overruled, and plaintiff excepted.

*Simmons & Corrigan*, for plaintiff.
*Goodwin & Westmoreland*, contra.

Simmons, Chief Justice.

1. It was contended on the part of the judgment creditor that, the mortgagee not having the legal title and being merely an agent of the mortgagor in the sale of the land, a purchaser at the sale would take the land subject to the lien of judgments against the mortgagor existing at the time of the sale, just as he would if the land were sold by the mortgagor herself. We do not concur in this view. The mortgagee, in the exercise of the power of sale, was something more than a mere agent of the mortgagor. The mortgage, it is true, did not convey title, and therefore the mortgagee did not acquire such an interest in the mortgaged property as would prevent a revocation of the power of sale by the death of the mortgagor (*Wilkins* v. *McGehee*, 86 Ga. 766), but he did acquire such a vested right in the

power as could not be divested in the lifetime of the mortgagor, either by any act of revocation on her part, or by the rendition of a judgment against her in favor of a subsequent creditor. *Calloway* v. *Bank*, 54 *Ga.* 441; *Ray* v. *Hemphill*, 97 *Ga.* 564; and see *Wilkins* v. *McGehee*, supra. In the present case there was no stipulation that the power should be irrevocable, such as was contained in the mortgage dealt with in the case of *Hemphill* v. *Ray*, supra; but we do not think such a stipulation is essential in order to give the power that effect; and in this view we are supported by the authorities cited in the opinion of the court in that case. See opinion of Marshall, C. J., in Hunt *v.* Rousmanier, 8 Wheaton, 174; 1 American Leading Cases, Hare & Wallace, *578; 2 Story on Agency (8 ed.), §477. Under these authorities a power of sale which is a part of a security is from its own nature and character, in contemplation of law, irrevocable, even though it be not made so in terms.

In *Calloway* v. *Bank*, supra, a power of sale in a mortgage which contained no such stipulation was held irrevocable; and although in *Wilkins* v. *McGehee*, supra, the reasoning of McCay, J., in so far as he treated the power as coupled with an interest in the land itself, was disapproved, and it was held that such a power would not survive the death of the mortgagor, we nevertheless said that under the facts of the case the decision was right, the mortgagor being in life at the time of the exercise of the power. In the *Calloway* case, as in the present case, the rights of a creditor holding a judgment junior to the mortgage were involved.

A creditor of a mortgagor who obtains his judgment subsequently to the execution of a mortgage which has been duly registered takes it subject to the rights of the mortgagee; and the power of sale being a part of the security, he takes it subject to the exercise of that power. His judgment attaches merely to the equity of redemption. (*Tarver* v. *Ellison*, 57 *Ga.* 54.) He stands in the shoes of the mort-

gagor, and cannot defeat the exercise of the power any more than the mortgagor himself could.

"To permit the mortgagor to prevent the exercise of this power by subsequent grants, or to allow his creditors to defeat [it] by subsequent judgments, would be, in substance, a reservation of the power, and would render the security worthless, so far as its value depended on the power." Thompson, J., in Bancroft *v.* Ashhurst, 2 Grant's Cases (Pa.), 520. If a subsequent creditor could effect a revocation of the power by obtaining a judgment against the mortgagor, the mortgagor himself could at any time before the exercise of the power effect a revocation by contracting indebtedness to others, and permitting or procuring judgments to be taken against him; so that at last the right of the mortgagee to avail himself of the power which he had contracted for as a part of his security, would be dependent on the will of the mortgagor.

In Jones on Mortgages, it is said that the purchaser at a sale under a power of sale in a mortgage "takes the mortgagor's title divested of all incumbrances made since the creation of the power," and that "a sale regularly exercised under a power is equivalent to strict foreclosure by a court of equity properly pursued, or to a foreclosure and sale under a decree in equity, and cannot be defeated to the prejudice of one purchasing in good faith. Vol. 2, §1897. See also Id. §1654. The same author further says: "Although in several States a mortgage is by statute or judicial interpretation declared to be a mere security for the payment of a debt, and not a conveyance of the legal title, yet this view of the nature of the security does not in any way interfere with or impair the doctrine of powers to sell." (§1767.)

2. It is well settled that a mortgagee may purchase the mortgaged property at a sale by him under a power of sale in the mortgage, if by the terms of the mortgage he is expressly authorized to do so. See 2 Jones on Mortgages,

§1883. Even where no such authority is expressly given, the sale, if made fairly and without fraud, would not be void, but merely voidable. *Palmer* v. *Young*, 96 *Ga.* 246. *Judgment affirmed. All the Justices concurring.*