MOORE <em>et al.</em> v. WOLFF <em>et al.</em>

1. Where the owner of land executes a security deed containing a power of sale to be exercised by the grantee upon the happening of certain contingencies, and subsequently executes a deed conveying a part of the land to a third party, releasing it, with the consent of the grantee, from the lien of the security deed, and subsequently the remainder of the land included in the security deed is sold, the transferee of the security deed containing the power may exercise the power of sale as to that part of the land not included in the deed of conveyance to the first purchaser from the grantor. The rights of the purchasers

from the grantor of the land covered by the security deed and the settlement of questions as to the right of contribution can not delay the holder and transferee of the security deed from enforcement of his claims for the debt due him by an exercise of the power of sale.

2. The ruling made in the preceding headnote disposes of the question raised by the assignment of error upon the ruling of the court sustaining the demurrer of one of the defendants. The sustaining of that demurer removed one of the defendants from the case; and as to the other defendant, claiming to hold a deed against the peti-. tioners, the petitioners had an adequate remedy at law.

· No. 3101. FEBRUARY 28, 1923.

Equitable petition. Before Judge Malcolm D. Jones. Monroe superior court. February 11, 1922.

*Robert L. Berner,* for plaintiffs.

*Jones, Park & Johnston, Wallace Miller,* and *S. Rutherford,* for defendants.

BECK, P. J. Clayborn B. Moore, Amos Moore, and Oscar Moore brought their equitable petition against Mrs. Edward Wolff, Miss Bessie (Bertha) Wolff, the Middle Georgia Loan & Trust Co., which is hereinafter referred to as the loan company, and the trustee in bankruptcy of Willingham's Warehouse, alleging in substance that in 1915 W. E. H. Searcy Jr. borrowed from the Middle Georgia Loan & Trust Co. $3800, and gave as security for the debt a deed with power of sale, covering 732-½ acres of land in Monroe County, known as the James Thweatt place. This security deed was duly recorded. Searcy then sold the entire place to Willingham's Warehouse, a corporation, which seems to have paid the semi-annual interest notes regularly until the last interest note; and the principal note matured on Nov. 1, 1920. Default occurred in the payment of the principal note and the last interest note. On Jan. 25, 1921, the Middle Georgia Loan & Trust Co. agreed, in an instrument which was duly recorded, that the lien of the Searcy security deed to it should be subordinated and stand second and inferior to the lien of a security deed given by one Jesse Franklin to A. Chamblee for $1600, covering 100 acres of the Thweatt place, which 100 acres Franklin had meantime purchased from Willingham's Warehouse. Thereafter Mrs. Edward Wolff purchased the Searcy note and security deed from the Middle Georgia Loan & Trust Co., took a transfer thereof and of the land securing the same, and proceeded, under the power of sale in the deed, to advertise the land for sale on Friday, July

1, 1921. There is no attack on the amount due under the Searcy note now owned by Mrs. Wolff. Meantime, Willingham's Warehouse, the purchaser from the mortgagor, divided the Thweatt place into five parcels and sold these parcels off to different purchasers, as follows: one parcel of approximately 200 acres to Clayborn B. Moore, on Nov. 7, 1917; one parcel of approximately 150 acres to Amos Moore, on Nov. 27, 1917; one parcel of approximately 150 acres to Oscar Moore, on Nov. 27, 1917; one parcel of approximately 150 acres to Clayborn B. Moore, on Nov. 30, 1917; one parcel of approximately 100 acres to Jesse Franklin, date of sale not shown in the petition. Annual notes representing deferred payments of a large portion of the several purchase-prices were taken from the purchasers by Willingham's Warehouse in each instance, and the purchasers were given bonds for title. The outstanding Searcy note and security deed were not taken into consideration in these several sales. The purchase-money notes given by these several purchasers were immediately discounted by Willingham's Warehouse and sold to Miss Bertha E. Wolff, and the notes turned into her physical possession. No conveyance of the land was made to Miss Wolff. Willingham's Warehouse is alleged to have been the financial agent for Miss Bertha E. Wolff in the collection of these notes. The petition alleged, that the three Moores paid to Willingham's Warehouse their several purchase-money notes, anticipating the maturity in each instance, that Willingham's Warehouse did not have the notes in its possession at the time of payment, and the notes were never surrendered to them; that this payment constituted a complete and perfect payment of the notes; that Miss Wolff is nevertheless holding and demanding payment of $2400 of notes given by Clayborn B. Moore on his two purchases, $1200 of notes given by Amos Moore on his purchase, and $1500 of notes given by Oscar Moore on his purchase; that Mrs. Wolff purchased the Searcy notes and security deed for the purpose of forcing the three Moores to pay her daughter, Miss Bertha E. Wolff, the notes of which Miss Wolff was demanding payment; that Mrs. Wolff through her attorneys had refused to sell to a third party the Searcy notes and the security deed at face value; that although Mrs. Wolff was advertising for sale the entire Thweatt place as covered by the Searcy security deed, there was an agreement on

her part that she would not sell the 100 acres covered by the Chamblee deed from Franklin; that the subordination agreement entered into between the Middle Georgia Loan & Trust Co. and Chamblee destroyed the power of sale in the security deed given by Searcy to the Middle Georgia Loan & Trust Co., and transferred to Mrs. Wolff; that it would be unfair to the three Moores to sell their lands and not sell the Franklin lands; that the Searcy debt should be apportioned among the several purchasers of portions of the Thweatt place, and the lands of each purchaser charged with its equitable share of this debt. The prayers were that the advertised sale by Mrs. Wolff be enjoined; the Searcy security deed be canceled as a cloud on the title of the several petitioners, or that the share of the Searcy debt which each of the several purchasers from Willingham's Warehouse should pay be equitably apportioned, and each purchaser's land be held subject to its portion of that debt, and no more; and that the notes of which Miss Wolff is demanding payment, and which she purchased from Willingham's Warehouse, be decreed to have been paid and ordered surrendered up and canceled.

On this petition the advertised sale was temporarily enjoined. Later, Miss Wolff having filed suit on such of her notes as had matured, petitioners, by an amendment to their petition, obtained a further temporary restraining order against Miss Wolff proceeding to judgment in her suit on these notes. The Middle Georgia Loan & Trust Co. and the trustee in bankruptcy of Willingham's Warehouse made no appearance. Mrs. Wolff and Miss Wolff filed separate but identical demurrers on general grounds, and on the further grounds that the petition is multifarious, that there is a misjoinder of parties plaintiff, and that there is a misjoinder of parties defendant. At the hearing these demurrers were sustained. No order was taken dismissing the petition, even so far as the demurrants were concerned. So far as appears from the record, the case remains in court against the loan company and the trustee in bankruptcy. The case is here on exceptions to the judgment sustaining the demurrers.

We are of the opinion that the court properly sustained the demurrers. As to the debt due Mrs. Edward Wolff, there is no contention that she is not entitled to the amount claimed; but petitioners insist that she can not proceed against the land pur-

chased by petitioners which is included in the security deed, and sell the same under the power in the deed, because of the fact that 100 acres of this land had been sold to Franklin and a release given as to this tract of land. We can not agree to this contention. The fact that a part of the land had been sold off and the lien of the security deed upon the part thus sold had been released would not prevent the holder of the security deed from exercising the power of sale which covered the entire property deeded by Searcy to the loan company. In the case of *Brewer* v. *New England Mortgage Security Co.,* 144 *Ga.* 548 (87 S. E. 657), it was said: "Where a mortgagee holds a mortgage covering several lots of land, some of which are conveyed by the mortgagor to one person and some to another, upon foreclosure of the mortgage the mortgagee has a right to levy upon any of the land covered by the mortgage, without regard to the order of its alienation. *Barden* v. *Grady,* 37 *Ga.* 660; *Hollinshed* v. *Woodard,* 124 *Ga.* 721 (52 S. E. 815). The senior grantee has no right by equitable proceedings to compel the mortgagee to proceed first against the land held by the junior grantee. The Civil Code (1910), § 6029, lays down a rule of contribution among purchasers, and does not affect the right of the creditor to levy upon any of the parcels subject to his execution. Accordingly, where an equitable petition was filed for the purpose of setting aside a judgment in a claim case, subjecting a certain piece of property to the mortgage execution, there was no error in rejecting an amendment which alleged, that the mortgage covered several lots of land; that two of these were conveyed to the plaintiff in the petition, and others later to a third party; that the mortgagee for a stated sum released from the lien the lots last conveyed; that they were of more value than the amount paid to the mortgagee; that an accounting should be taken; and that the land conveyed to the plaintiff should be relieved, in whole or in part, from the lien of the mortgage execution." The ruling there made was with reference to a foreclosure sale made by a sheriff; but the same principle is applicable where the sale is under a power of sale in a mortgage or security deed.

In the case of *Mutual Loan & Banking Co.* v. *Haas,* 100 *Ga.* 111 (27 S. E. 980, 62 Am. St. R. 317), it was said: "Where on default of payment the mortgagee exercised the power by

selling the land, this was equivalent to a sale under a fore-closure of the mortgage by a court of competent jurisdiction. We do not think that where a deed containing a power of sale like that involved in the present case covers certain tracts of land, and one of them is sold off by the grantor and the lien upon that part of the land released, the grantee of the power can be stopped from exercising that power upon grounds which would not be good as against a sheriff who was proceeding to sell land under a mortgage after foreclosure proceedings duly had, in a case where part of the land mortgaged had been sold off by the mort-gagor and the lien of the mortgage released as to that part. Whether a vendee of a part sold off and released from the lien of the mortgage or the security deed can be made to pay his proportionate part of the debt, under proper proceedings in-stituted by the purchasers of the other parts of the land from the mortgagor, is a question to be settled between the purchasers of the land in proper proceedings brought to determine the right of one to contribution from others; and the holder of the se-curity deed or the transferee of the same will not be delayed in their enforcement pending the settlement of the question of con-tribution. For it was said in the case above quoted from: " The Civil Code (1910), § 6029, lays down a rule of contribution among purchasers, and does not affect the right of the creditor to levy upon any of the parcels subject to his execution." The purpose which Mrs. Wolff had in view in the exercise of the power, and her ultimate motives, will not authorize a court of equity to en-join her from exercising the power of sale where it is necessary to the collection of the debt due her; and consequently her de-murrer was properly sustained. No cause of action was stated against her, and she should not have been joined in the suit. Mrs. Wolff having been eliminated from the suit, there are no grounds upon which equity could retain jurisdiction of the suit against Miss Bessie (Bertha) Wolff. The defense against the debt which she is seeking to enforce by suit can be urged at law; and the interference of equity is unnecessary as against the de-fendant named, to protect the petitioners. They have a complete and adequate remedy at law.

*Judgment affirmed. All the Justices concur.*