## RAWLINS *et al. vs.* RAWLINS.

1. This case turned on the question whether there was fraud in the giving of a note so as to absorb the share of a husband in his father's estate, and thus defeat a recovery of alimony by his wife, who was living separately from him; and the evidence was sufficient to authorize a submission of this question to the jury.

2. While generally it is a personal privilege to plead the statute of limitations, yet where a wife living separate from her husband had filed her bill against him and the administrator of his father's estate to subject his interest in the estate to her claim for alimony, it would not be equitable to change an invalid claim against him in behalf of the decedent, all uncertain and confused, all out of date, except one fraction which seems doubtful, into a valid and certain one against the property which would be coming to him, and thus to defeat the wife's action.

3. Even if an administrator may hold notes or other claims which are out of date, against the share of the distributee in the estate, yet he cannot set them off when the rights of others are concerned, and the indebtedness is found to be fraudulent, on an issue made to try that point.

December 22, 1885.

Fraud. Husband and Wife. Statute of Limitations. Alimony. Administrators and Executors. Before Judge BRANHAM. Floyd Superior Court. March Term, 1885.

Reported in the decision.

UNDERWOOD, ROWELL & CHENEY, for plaintiffs in error.

WRIGHT, MEYERHARDT & WRIGHT, for defendant.

JACKSON, Chief Justice.

A bill in equity was brought by Mrs. Annie Rawlins in behalf of herself and infant children for permanent alimony against J. R. Rawlins, who had been gone several years to Arkansas, and the administratrix of the estate of J. C. Rawlins, the father of her husband, of the county of Floyd, so as to secure this alimony out of the distributive share of her husband in the estate of the said J. C. Rawlins, deceased. On account of bad treatment by the husband, the wife with the children left him, and he left Georgia afterwards, and they live separate.

The jury returned a verdict for the complainant for some thousand dollars; a motion was made for a new trial, which was denied upon the complainant's writing off from the verdict enough to reduce it to some six hundred dol-

lars. The reduction was made and the new trial refused, and this judgment is for review here.

1. The case depends upon a single point, and that is the charge of fraud and collusion between the husband and the administratrix to prevent the recovery of the alimony by showing that the husband was indebted to his father enough to exhaust his share, and thus defeat alimony out of it. If there was no such swelling of the husband's indebtedness improperly and fraudulently, then there was no share left, and no chance for alimony; but if it had been fraudulently swollen to absorb all his share, in order to defeat the alimony, then there would be a share for the husband, to which his wife and children could look for alimony; and the point of fraud or no fraud turns on a certain consolidated promissory note, which was given after this suit was brought by the husband of complainant to the administratrix. The court below put the question of fraud or no fraud in respect to that note to the jury; and the only exception taken to the charge of the court is, that this issue should not have been given in charge, because there was no evidence to sustain or support such a charge. The court below thought differently, and we concur with the court.

The note was consolidated out of some five or six papers, every one of which was out of date, and not one of which was binding upon the husband. There is no evidence that they were considered as advancements by the intestate. They were not even appraised by the appraisers. They were put at the end of the inventory by the administratrix as certain papers found among the intestate's papers, but with no ear marks of value upon them, and especially not the slightest sign that they were held by the deceased to be accounted for as advancements. The note which brought to life these dead papers by giving one called "the consolidated note," in lieu of them, was written in Rome, dated in Rome, consolidated in Rome, from calculations made in Rome after this bill was filed, and instantly, so

soon as the mail could travel, was returned from Arkansas to Rome, without examination or calculation, so far as this record discloses. The papers thus consolidated in Rome, are appended to the answer as an exhibit, alluded to in the testimony and noticed at the end of the inventory, but not appraised. They embrace a note of $300.00, out of date at the death of intestate; a draft for $200.00, drawn by J. R. on J. C. Rawlins, also out of date when intestate died; a draft on J. C. by J. R. Rawlins, payable to the order of self, and endorsed by him for eighty dollars, also out of date; in other places in the record, but dated in 1882 in the exhibit to bill, another note of J. R. Rawlins & Co., given to J. C. for $100.00, but out of date when intestate died; and a note and account, the first for $41.00 and the other for $5.65, which J. C. paid for J. R., April 12th, 1865, amounting to $50.00 principal and interest, also out of date. Some of these drafts are stated to be accepted and some endorsed.

So that it is quite remarkable that one having such dealings with another, who holds against him such confused evidences of indebtedness, should so promptly sign a note consolidating them, with no sort of settlement or evidence, or any motive except to give up all interest in his father's estate to others of the family. To be sure to be just before one is generous, is a maxim much to be commended; but the question before this jury was, whether he did not prefer to be just towards his mother and brothers and sisters with whom he had had no quarrel, rather than with the wife whom he maltreated and forced from his home by that maltreatment and left in Georgia with the little ones, also abandoned by him, whilst he for six years was off in Arkansas. Perhaps malice against the wife, rather than justice towards anybody, was the motive which led to his conduct in so easily giving up his interest in his father's estate, when he knew that those whom he had left to shift for themselves would get that interest, and he not even share in it. Hence, he puts these claims, thus out of date

and uncertain, in a new note, in date and valid and binding, after this bill was filed, and did so in such speed, returning the note by next mail to be ready for the legal fray. We agree with the court below, that the evidence is ample to authorize the charge, and sufficient to uphold the verdict of fraud.

2. But the learned counsel insists that, to plead the statute of limitations is a personal privilege, and he could waive it and make the new note, if he wished. So he might, if none other but himself had an interest therein; but pending a suit against him and the administratrix of the estate, claiming all his interest therein, it would be anything but equitable to permit him to do anything of the sort. It is just the same as if he disposed of his property to avoid alimony after the suit for alimony was brought, so put an invalid claim, all uncertain, confused and out of date, all of it, but one fraction, which seems doubtful, into a valid and certain one against property coming to him, is as wrong as to give to others that property pending the application for alimony. It cannot be done. Code, §1721; 36 *Ga.*, 286. The Code and the case cited, it is true, apply to divorces and the alienation of property fraudulently, pending suit; but they go to the property, its division and disposal, and are as applicable to suits for alimony out of property as the claim of property incident to the divorce.

3. But counsel cite authority to show that the administrator may hold notes out of date, or other claims out of date against the distributive share of a distributee; but even if that be so, he cannot set them off when the rights of others are concerned, and the indebtedness is found to be fraudulent, on an issue made to try that point.

On the whole, the judge below being satisfied with the verdict finding that the arrangement was fraudulent which consolidated these loose demands, to say the least about them, reflecting upon their validity before consolidation, we decline to interfere, and affirm the judgment.

Judgment affirmed.