## WILLIAMS v. WILLIAMS COMPANY.

1. The right to disaffirm a voidable sale is personal to the mortgagor.
2. A creditor whose judgment is inferior to the mortgage can not, by levy of a common-law execution, subject property held by the mortgagee under a title voidable because purchased at his own sale under a power.
3. Neither can a judgment creditor of an heir levy upon and sell land formerly belonging to the estate but held by a voidable title because of a purchase by the administratrix at her own sale.
4. Where the interests of creditors are not involved, heirs may agree upon a division of the estate, and to that end may adopt an irregular and unconfirmed report of appraisers originally appointed to distribute the estate in kind.
5. Where a *consent division* of an estate has been made, each heir, without deed or further conveyance, acquires a perfect equity in the property set apart to him, and loses all interest in that assigned to the other distributees.
6. The mortgage was older than the plaintiff's judgment.   The sale under the power conveyed to the purchaser a title which was good as against the plaintiff's lien; and there was no error in ruling that the property was not subject to the execution.

Submitted January 30, — Decided March 2, 1905.

Levy and claim.　　Before Judge Seabrook.　　Appling superior court.　　January 9, 1904.

On April 5, 1899, Joseph Williams obtained judgment against I. I. Moody and George Moody. The execution was levied on an undivided two-sevenths interest in 125 acres of lot No. 3, and a like interest in lot No. 2, in the 2d district of Appling county. The J. P. Williams Company, purchasers under a mortgage from I. I. Moody and Robert Moody, dated January 20, 1897, filed a claim. The plaintiff assumed the burden, and proved that the defendants in fi. fa. were two of seven heirs of I. I. Moody, who died sometime about 1890, in possession of the property levied on. The plaintiff's contention was, that there never had been any lawful sale, distribution, or division of the estate, and that the title to the interest levied on was still in the defendants in fi. fa. The claimant proved that letters of administration were granted to J. H. Dean and Martha E. Moody; that in March, 1892, there was an order to sell lot No. 3; that on April 5, 1892, the administrators conveyed lot No. 3 to J. W. Miles; that on the same day he conveyed lot No. 3 to Martha E. Moody, and she, on January 12, 1897, conveyed 125 acres thereof to I. I. Moody, and this 125 acres was included in the mortgage of January 20, 1897, from Moody and brother, I. I. Moody, and Robert Moody to J. P. Williams Co. In order to sustain its title to lot No. 2, the claimant, over the plaintiff's objection, offered evidence to show that the administrators of I. I. Moody had applied for the appointment of appraisers to divide the estate; that a division had been made, and the report had been returned to the court in 1896 and 1897, but had not been entered; that after the administrators were discharged, and after the lien of the plaintiff's judgment had attached against I. I. Moody and George Moody, the heirs filed a petition reciting the fact of the appraisement, attaching the report of the appraisers, and asking that the same be made the judgment of the court nunc pro tunc. This order was passed. From the return, dated January 25, 1896, it appeared that the estate had been divided among the heirs, and that the west half of lot No. 2 was assigned to Isaac Moody, and the east half to Robert Moody, these last two being mortgagors, and lot No. 2 being a part of the mortgaged property. In addition, the claimant proved by Mrs. Moody, the administratrix, that

she remembered the division of this land belonging to the estate; that there was never any objection to it; that all the heirs accepted their portion under the division, have always acquiesced under the division, have disposed of their portions in many ways, have received their portions of the estate and acquiesced therein.

Having offered this proof of title to 125 acres of lot 3, in I. I. Moody, and title in I. I. Moody and Robert Moody to lot 2 under the division aforesaid, the claimant next introduced the mortgage to J. P. Williams Co. This mortgage contained a power of sale, but made no reference to any right on the part of the mortgagee to purchase at such sale. The evidence showed that the property had been advertised in pursuance of the power, and was purchased on January 10, 1899, for $982, by J. H. Thomas, who testified that he acted for the Williams Company in the foreclosure, took from it a deed in his own name, and at once conveyed to it, no money passing. The abstract of the mortgage does not show the amount secured by it. At the conclusion of the evidence the court directed a verdict for the claimant, and the plaintiff in fi. fa. excepted. He also assigned as error, that the court allowed the proceedings from the court of ordinary to be proved other than by properly certified copies, and admitted parol evidence of the appointment of appraisers and their returns, and allowed the order nunc pro tunc to be offered, the latter having been entered after the discharge of the administrator and after the rendition of the judgment creating the lien in favor of the plaintiff against I. I. and Robert Moody.

*Kay, Bennet & Conyers* and *W. W. Bennett,* for plaintiff.
*Thomas & Parker,* contra.

LAMAR, J. (After stating the foregoing facts.) A judgment creditor may not only sell the defendant's tangible property, but by garnishment he may acquire a control over his choses in action, and thereby in effect bring suit against his debtor's debtor. Indeed, so extensive are the creditor's rights that it may be said that the judgment creditor stands in the judgment debtor's shoes. But this rule is not without exception. For there are cases in which a creditor may enforce claims where the debtor could not. And, conversely, the debtor may proceed where the creditor could not. Secret liens and fraudulent deeds may bind the one and be ineffective against the other. On the other hand the debtor may sue

for torts, but the creditor can not make such a cause of action available even by a process of garnishment.   In some cases it would be greatly to the advantage of the creditor if the debtor would plead the statute of limitations or the statute of frauds, or make particular defenses or assert certain rights.   Yet in these cases the creditor can neither compel the debtor to act nor act for him.   The creditor is not the guardian of the debtor, and can not interpose defenses for him nor avail himself at law of privileges which are personal to the debtor.   *Zellner* v. *Mobley*, 84 *Ga.* 749; *Wilson* v. *McMillan*, 62 *Ga.* 19; *Daniel* v. *Frost*, 62 *Ga.* 706 (2); *Rawlins* v. *Rawlins*, 75 *Ga.* 636.   In this class stands the case of disaffirming voidable sales.   If the sale had been absolutely void, of course no title would have passed, the lien of the mortgage would have continued, and the land would have been subject to the execution.   Compare *Hood* v. *Perry*, 75 *Ga.* 310, with *Zellner* v. *Mobley*, 84 *Ga.* 749; *Comer* v. *Allen*, 72 *Ga.* 11 (2); *Thompson* v. *Feagin*, 60 *Ga.* 82 (2); *Booker* v. *Worrill*, 55 *Ga.* 332; *Humphrey* v. *Copeland*, 54 *Ga.* 543 (1); *Chappell* v. *Boyd*, 61 *Ga.* 667.   But here the sale was only voidable.   The mortgagee was an agent authorized to sell, even if not authorized to buy.   *Whitley* v. *James*, 121 *Ga.* 521; *Mutual Co.* v. *Haas*, 100 *Ga.* 111.   The mortgagor could ratify an irregularity in the execution of the power; or he could within a reasonable time disaffirm.   But at the sale title, even if defeasible, passed, and as long as he remained silent, he was bound, and he being bound, so were his privies in estate.   The mortgagor has an interest in not being held liable for the deficiency in the mortgage debt, or in lessening the amount of the deficiency.   It may have been greatly to his interest to let the voidable sale stand.   The property may have brought the full amount of the debt, or it may have sold for more than it would bring on a resale.   By the levy of an execution issued on a judgment junior to the mortgage the creditor acquires no right to undo what has been done, and what the mortgagor may have good reason to object to having undone.   Compare *Martinez v. Lindsey*, 91 Ala. 334; *Palmer* v. *Young*, 96 *Ga.* 246.

2. If the judgment creditor can not, under an ordinary levy of a common-law execution, object to a voidable sale divesting the title of the mortgagor, neither can he as creditor of the heir take advantage of irregularities in the sale of the property belonging to

the estate, or of the fact that the administratrix bought at own sale, and therefore acquired only a voidable title.

3-5. Neither can a judgment creditor uproot or set aside partition of the estate. Where the interests of creditors are not involved, the heirs may agree upon a division, or they may adopt and make valid a distribution under what would have been void as a judicial proceeding. The partition followed by acts adopting the same clothed each heir with a perfect equity to the part assigned to him and at the same time divested his title in what had been assigned to the others. Under this distribution George Moody has no interest in the property levied on. That originally purchased by the administratrix as well as that assigned to Isaac was included in the mortgage, which was older than plaintiff's judgment. The court properly directed a verdict finding the property not subject. *Adams* v. *Spivey*, 94 *Ga.* 676; *Amis* v. *Cameron*, 55 *Ga.* 449.

*Judgment affirmed. All the Justices concur.*