## PAYTON *et al.* v. McPHAUL.

1. A mortgage which describes the property mortgaged as "100 acres in the southeast corner" of a given lot of land, which contains 490 acres and is in the form of a square, is sufficient as a description. The corner of the lot is to be taken as a base point from which two sides of the tract of land conveyed shall extend an equal distance, so as to en-·close by parallel lines the quantity conveyed.

2. The power of sale in a mortgage authorized a sale "before the court-house door in the town of Isabella, Ga." Subsequently to the execution of the mortgage the county site of the county was removed from the town of Isabella to Sylvester. *Held,* that a sale before the court-house door in Sylvester was a valid execution of the power.

3. A deed by a mortgagee, signed in his own name, but purporting to be in the execution of the power of sale in the mortgage, is a good execution of the power, when the recitals of the deed are sufficient to indicate that it was the intention of the grantor to convey in behalf of the mortgagor, and not in his own behalf.

4. The general rule is that the mortgagee can not be a purchaser at his own sale under the power in the mortgage, but a purchase by him is not absolutely void, but voidable only, at the instance of the mortgagor or the owner of the equity of redemption. A purchaser at an execution sale subsequently to the sale under the power, the execution being based on a judgment rendered after the execution and record of the mortgage, will not be allowed to impeach the purchase by the mortgagee at his own sale.

5. The power of sale in a mortgage is not rendered void by reason of the fact that the debt sought to be secured is infected with usury. A sale under the power may be had for the purpose of collecting the principal and lawful interest on the debt.

6. No sufficient reason has been shown for reversing the judgment complained of.

Submitted May 25,—Decided June 14, 1907.

Injunction.    Before Judge Spence.    Worth superior court. October 22, 1906.

John G. McPhaul filed a petition against Claude Payton, C. E. Hay, and J. D. Bridges, alleging, that on July 7, 1904, W. D. Collier executed and delivered to the Bank of Poulan a mortgage to secure a debt of $490.20, due October 15, 1904, upon property described as follows: "100 acres in the southeast corner of lot No. 307 in the 7th District of Worth County, Ga." The mortgage contained the following provision: "Should this debt not be paid at maturity, the said bank of Poulan, Poulan, Ga., or their assigns are hereby authorized to advertise and sell the real property hereby mortgaged, before the court-house door in the town of Isabella, Ga., four weeks notice of such sale being made by the publication in a newspaper published in the town of Sylvester; and the said Bank of Poulan, Poulan, Ga., or their assigns, are hereby authorized and empowered to make purchaser at such sale fee-simple titles to the property sold. The proceeds arising from the sale of the property to be applied to the payment of the debt and the ex-

penses of advertising and selling the same, and the balance, if any, paid over to the undersigned." Collier failed and refused to pay the debt at maturity, and the Bank of Poulan, after advertising the property for four weeks in a newspaper published in Sylvester, exposed the property for sale, within the legal hours of sale, before the court-house door of Worth County, in the city of Sylvester, and the plaintiff became the purchaser of the property, for $1,000. On September 4, 1906, in pursuance of this sale, the Bank of Poulan executed and delivered a deed to the plaintiff, conveying the property.

At the June term, 1904, of the City Court of Sylvester, Hornic & Co. recovered certain common-law judgments against Collier; and on July 30, executions, issued thereon, were levied on the property; and, on the same date that the sale under the power took place, but after that sale, the sheriff exposed the land described in the mortgage to sale under the executions above referred to. Payton became the purchaser of the same, for $83. The sheriff executed and delivered a deed to Payton & Hay, who afterwards conveyed a half interest to Perry by a quitclaim deed, upon a consideration of $37.50, and Perry subsequently conveyed his half interest to Bridges upon the same consideration. On September 4, 1906, McPhaul entered into possession of the property he had purchased at the sale under the power, and posted notices in three or more conspicuous places on the land, that he was the owner thereof. On September 13, the sheriff undertook to put Payton & Hay in possession, accompanying Payton to the land, McPhaul being at that time in possession of the land. The notices posted by McPhaul were destroyed by Payton, and notices were posted by him, claiming the property for himself and Hay, and forbidding trespassing thereon. As soon as McPhaul learned of these acts he removed such notices and reposted the land in the manner in which he had posted it at the time that he took possession. It is distinctly alleged that he is now in possession. He alleges that he is informed and believes that the defendants intend to re-enter and continue to interfere with his possession by attempting to rent his land and place tenants in possession thereof, and do other acts interfering with his right of possession and enjoyment of the property. The prayer of the petition is for an injunction to restrain the defendants from interfering with the right of possession and

the use of the property; that the sheriff's deed to Payton & Hay, as well as the deed from Perry to Bridges, be delivered up and canceled; and for process. The judge sanctioned the petition, granted a temporary restraining order, and set the case down for a hearing.

At the hearing the defendants showed as cause against the granting of the injunction a demurrer and an answer. The demurrer set up that the allegations of the petition were not sufficient to authorize any of the relief prayed for; that it did not appear from the petition that there was any sum due on the mortgage at the time the power of sale was exercised, such sale taking place nearly two years after the maturity of the debt; that it appears from the facts stated in the petition that the legal title to the property is in the defendants; that the deed to the plaintiff was not in harmony with the power; that it appears from the copy of the deed from the Bank of Poulan to McPhaul, attached to the petition, as an exhibit, that McPhaul is the president of the Bank of Poulan, and that therefore he was acquainted with all of the facts in reference to the deed, and it was incumbent upon him to show that the debt was unpaid and that there was no usury in it; and that the description of the land in the mortgage is so indefinite that no lien was created by the execution thereof. In the answer it was averred, that the description in the mortgage was too indefinite; and that McPhaul was active manager of the Bank of Poulan and the largest stockholder, and he was not authorized to purchase at a sale had by the bank, and that the bank had no authority to sell the property at Sylvester, the power only authorizing a sale at Isabella; that McPhaul has not complied with his bid and paid the amount thereof; that the debt which the mortgage was given to secure was infected with usury, and the power of sale in the mortgage was therefore void; that the judgments in favor of Hornic & Co., were the only valid liens on the property, and the title to the property is therefore in the defendants. The answer denied that McPhaul was in possession, and set up that the defendants were in possession, and that Anglin, who was the tenant of Collier, had attorned to them as landlord. It is admitted that it is the intention of the defendants to erect a dwelling-house upon the land at an early date, and that as soon as the injunction is dissolved it is their desire to con-

tinue to improve the land which is theirs. The answer concludes with a prayer that the plaintiff be enjoined from interfering with the right of possession of the defendants, and their enjoyment of the property, and that the deed to the plaintiff be delivered up and cancelled. The judge, after hearing the evidence, passed an order granting the injunction prayed for by the plaintiff, and the defendants excepted.

*Payton & Hay* and *T. R. Perry*, for plaintiffs in error.

COBB, P. J. (After stating the facts.)

1. The court will take judicial notice of the fact that land lot number 307 in the 7th district of Worth County, Georgia, contains 490 acres and is in the form of a square. *Huxford* v. *Sou. Pine Co.*, 124 *Ga.* 182 (3). It is claimed that the description of the property mortgaged is so indefinite that no lien was created by the execution of the mortgage. The description is "100 acres in the southeast corner of land lot No. 307 in the 7th district of Worth County, Ga." A deed or mortgage will not be held void for an insufficient description of the property if by any reasonable construction of the terms of the instrument the description therein used can be held to enclose or embrace a tract of land. If three sides of a tract are given, and there is nothing to indicate that the line not given is otherwise than a straight line, the description will be completed by supplying a straight line, and thus enclosing a tract; this being presumed to be the intention of the parties. *Ray* v. *Pease*, 95 *Ga.* 153 (1). Persons do not execute deeds and mortgages except for the purpose of conveying, or creating a lien upon the property, and the intention to convey or create a lien will never be held to have been futile on account of the description of the property, when, by any reasonable construction, the instrument may be upheld. If two sides of a tract of land at right angles to each other are given, and it is clear from the instrument that it was the intention of the parties that the land conveyed should be in the shape of a square, the other two sides will be supplied by construction, by drawing lines parallel with those which are given. In Walsh v. Ringer, 2 Ohio, 327 (15 Am. Dec. 555), the deed described the land as "70 acres of land being and lying in the southwest corner of the southwest quarter section of section 14." In the opinion it was said: "The general position of the land conveyed is given with sufficient certainty. It is in the south-

west corner. According to the rules of decision, both in this State and in Kentucky, that corner is a base point from which two sides of the land conveyed shall extend an equal distance, so as to include by parallel lines the quantity conveyed. From this point the section lines extend north and east so as to fix the boundary west and south, the east and north boundaries only are to be established by construction, and the rule referred to gives them with sufficient certainty." See also 2 Devlin on Deeds (2d ed.), § 1013. The lot out of which the mortgage is to be taken is a square. The property intended to be mortgaged is in the corner of the square and contains one hundred acres. The number of acres intended to be mortgaged can not be more nearly or accurately described to be in the corner of the lot than by taking the lines of the lot forming the corner referred to, and drawing parallel lines from each of such lines at such a point that the four lines would embrace a square containing one hundred acres. It can be reasonably inferred that this was the intention of the parties; and this construction will be placed upon the terms used.

2. At the time the mortgage was executed, the county site of Worth County was the town of Isabella. At the time that the power of sale was exercised, the county site was at the City of Sylvester. The power of sale in a mortgage must be construed like other parts of the contract, so as to effectuate the intention of the parties; and this is true as to the place of sale as well as in regard to the other stipulations in the power. There are numerous cases dealing with the question as to the validity of sales where for some reason the place of sale, as indicated by the strict terms of the power, was not chosen as the place of sale on account of events transpiring between the date of the execution of the instrument and the date that the power was exercised. When the power provides that the sale shall be at the court-house door, the rebuilding, removal, destruction, or temporary abandonment of the building raises a doubt as to where the sale should be had under the power. The general rule is, that where the door of the court-house is designated as the place of sale, the building is referred to in its character as an official and public building, and that therefore the place of sale is the court-house at the time of the foreclosure, rather than the place used for that purpose at the time the mortgage is executed. This has been held even where the

court-house was temporarily abandoned, as well as in cases where the building was destroyed or permanently abandoned. The decisions, however, are by no means in harmony. No general rule seems to have been laid down fixing the place of sale when there has been a new location of the court-house. In some cases the sale at the old situs has been held good, and in others a sale at the door of the new structure has been upheld. 28 Am. & Eng. Enc. of Law (2d ed.), 804; 2 Jones on Mort. (6th ed.) §1848. In Napton *v.* Hurt, 70 Mo. 497, the power was to sell at the court-house in Kansas City, and after the execution of the mortgage the court-house was by law removed to and established in a different place in the same city; and it was held that the sale must be had at the new place, and not at the old. In Williams *v.* Pouns, 48 Tex. 141, it was held that a trust deed requiring the sale to be made at the court-house of the county is properly executed by a sale at the court-house of a newly organized county which includes the land sold. It will be seen, from an examination of these authorities, that the court is in each instance endeavoring to ascertain the intention of the parties and carry it into effect, as to the place of sale, and that wherever there has been a change of the location of the court-house between the date of the execution of the mortgage and the date of the sale, the sale has been upheld, even though at the new place, if it was fairly conducted and no injury was shown to have resulted from conducting it at such place.

The power in the mortgage under consideration declares that the sale shall be "before the court-house door in the town of Isabella, Ga." The question is whether it was the intention of the parties that the sale should be held at the place for legal sales for Worth County, or whether it was the intention that the sale should be at the town of Isabella, without reference to whether legal sales were conducted at that place. A sale could never be had in strict compliance with the power; for the reason that at the date of the sale there was no court-house door in the town of Isabella. It may be that the old building formerly used was still there, but it was no longer the court-house of the county. It does not appear that the land was situated in the town of Isabella, nor is there anything to indicate whether it was nearer the town of Isabella than to the City of Sylvester. It would be a reasonable construction of the terms of the power that it was the intention

of the parties that the sale should be held at the county site, rather than at the place which was no longer the place of holding sales for the county. The use of the word "court-house" is significant. Isabella can be considered as simply descriptive of the place where the court-house was situated, and not as the place designated for the sale. But the court-house door is the place. The court-house door of Worth County was, at the date of the sale, in Sylvester. We think the power was properly executed by the sale at the court-house door of Worth County, that is, in the City of Sylvester.

3. The deed made in pursuance of the sale under the power was signed by the Bank of Poulan through its president, vice-president, and a director. Objection is made that this was not a good execution of the power, for the reason that it should have been signed in the name of Collier. It distinctly appears, from the recitals in the deed, that it was the intention of the grantor to convey the property in behalf of Collier, and not in its own behalf. Under the ruling in *Tenant* v. *Blacker,* 27 *Ga.* 418, this was a good execution of the power. See also *Terry* v. *Rodahan,* 79 *Ga.* 278. If there is anything in the cases of *Compton* v. *Cassada,* 32 *Ga.* 418, and *Mosely* v. *Rambo,* 106 *Ga.* 597, in conflict with the ruling just referred to, what is said therein must yield to the older ruling. While it appears from the headnote in *Tenant* v. *Blacker* that the statement therein was the opinion of only Benning, J., an examination of the case shows that the point was directly involved and absolutely necessary to be decided.

4. It is said, though, that McPhaul was the president of the Bank of Poulan and the owner of a large majority of the stock therein, and that the purchase by him at the sale was really a purchase by the Bank of Poulan. The general rule is that a mortgagee selling under a power of sale can not buy at his own sale, either directly or indirectly. 28 Am. & Eng. Enc. Law (2d ed.), 818; 2 Jones on Mortgages (6th ed.), §1876. But a purchase by the mortgagee is not absolutely void. It is merely voidable, and only voidable at the instance of the mortgagor or the owner of the equity of redemption at the time of the sale. *Palmer* v. *Young,* 96 *Ga.* 246; 28 Am. & Eng. Enc. Law (2d ed.), 819; 2 Jones on Mortgages (6th ed.), §1876a. Neither a judgment creditor of the mortgagor whose judgment is rendered sub-

sequently to the execution and record of the mortgage, nor a purchaser at the sale under such a judgment subsequently to a sale under the power, is allowed to impeach a purchase by the mortgagee at his own sale. *Williams* v. *Williams,* 122 *Ga.* 178; Martinez *v.* Lindsay (Ala.), 8 Sou. 787.

5. The code declares that all titles made as a part of a usurious contract are void. Civil Code, §2892. But we know of no law which says that a mortgage shall be invalid when the debt sought to be secured thereby is infected with usury. The debtor may plead the usury and reduce the amount to be recovered in the foreclosure suit, but the lien of the mortgage may be asserted for the principal and lawful interest due on the debt. If the mortgagee is thus allowed to foreclose at law for the principal and lawful interest on the debt, we see no reason why he should not be allowed to exercise the power of sale to this extent. While the case of *Mosely* v. *Rambo,* 106 *Ga.* 597, may not be said to be a direct ruling on this question, the reasoning of the court tends to that end. In that case the mortgagor acquiesced in the sale under the power, and it was held that he could not thereafter impeach the sale on the ground of usury.

6. It is said that it does not appear from the allegations of the petition that the debt of Collier was unpaid at the time that the sale under the power was had. It does distinctly appear that the debt was not paid at maturity, and we do not think it is incumbent upon the plaintiff to negative the fact that payment had been made after maturity and before the execution of the power. The evidence was conflicting as to who was in possession of the land. Both plaintiff and defendants claimed to be in possession. The person in actual possession of the land seems to have been Anglin, and both of the parties claim him as a tenant. There was evidence that Anglin had attorned to each. The plaintiff was proceeding against him as a tenant by distress warrant to collect rent. Anglin had given a note to the defendants for rent. The judge resolved this issue of fact by holding that the plaintiff was in possession, and we will not disturb his finding on that question. If the plaintiff was in possession, he was entitled to the undisturbed possession. The defendants were interfering with him. They had committed an actual trespass. It is alleged in the petition that they were threatening to commit other

acts of trespass, and the answer practically admits that but for the injunction the defendants would have continued to deal with the land as their own. Such conduct on their part would amount to a trespass if the plaintiff was the holder of the legal title and in possession. We do not think that the judge abused his discretion in granting a temporary injunction until these issues of fact could be decided by a jury.

<div align="center">

*Judgment affirmed.   All the Justices concur.*