## OSTEEN *et al. v.* WYNN *et al.*

1. A description of land, located in a county which is laid off by government survey into square land lots, as all of a named lot except 50 acres in the southeast corner, means all the land included in the lot except 50 acres, located by taking the southeast corner as a base point from which two sides of the excepted land shall extend equal distances so as to include by parallel lines 50 acres, and is sufficiently definite.

2. Where a deed contains two descriptions of the land conveyed, one general and the other particular, if there is any repugnance, the latter will prevail. So where a deed conveys several lots of land by number, and all of a named lot except 50 acres in the southeast corner, followed by the words, "known as the Wooldridge plantation," the latter words are but matter of further description.

3. An unascertained or disputed boundary line between coterminous proprietors may be established, (1) by oral agreement, if the agreement be accompanied by actual possession to the agreed line, or is otherwise duly executed; or (2) by acquiescence for seven years by the acts or declarations of the owners of adjoining land, as provided in the Civil Code, § 3247.

  (*a*) If the line be established by oral agreement and possession be held to it, it is not necessary to the validity of such agreement that the possession continue for twenty years.

  (*b*) In order that a line may be established by acquiescence for seven years by the acts or declarations of the owners of adjoining land, it is not essential that the acquiescence be manifested by a conventional agreement.

4. When a line has been located by an executed parol agreement between the coterminous proprietors, or established by seven years acquiescence

as provided by the Civil Code, §3247, the line thus located and established is binding on the grantees of the coterminous proprietors.

Argued ·February 11,—Decided July 25, 1908.

Equitable petition.    Before Judge Little.    Chattahoochee superior court.    April 6, 1907.

E. J. and R. L. Wynn filed their petition against J. W. Osteen and others, to recover damages for trespass already committed by reason of defendants having entered upon described land of plaintiffs with their sawmill and sawed timber thereon, and to enjoin defendants from further trespass.    Plaintiffs allege that they are the owners of a certain tract of land .containing all of lot number 140 in the 33d district of Chattahoochee county, except fifty acres in the southeast corner.    Defendants purchased the timber on the fifty acres of this lot, which was excepted in plaintiffs' conveyance, but have not confined their operations to the fifty acres so purchased, having located their mill beyond the borders of the fifty acres, and have cut or are proceeding to cut timber belonging to plaintiffs, immediately surrounding the fifty-acre tract.    They pray for damages for the timber cut, and for an injunction to prevent further trespass.    Defendants filed a demurrer to the petition, which was overruled, and they excepted pendente lite.    They answered, admitting that they had a sawmill located in the southeast portion of lot number 140, but denying that their mill was located on plaintiffs' land, or that they had sawed any of their timber.    They allege, that all the timbered land in the southeast corner of lot number 140 belongs to Dr. C. N. Howard, and that plaintiffs' line runs on the edge of the timber, but does not embrace any of it; that plaintiffs' predecessors in title agreed that the outside edge of all this woodland be the line between these two tracts of land, and have recognized this boundary to be the line for more than seven years.

On the trial the plaintiffs introduced a deed from James B. Moore to R. L. Wynn, dated February 1, 1893, recorded February 10, 1893, upon a consideration of $1,500, to "all of lots of land numbers 148 and 149, of 202½ [acres] each, more or· less, and all of lot 147 ˙except 12 acres off the northeast corner, all of lot 140 except 50 acres off the southeast corner thereof, and all of lot 141 except 38 acres off the northern one fourth of said lot, said .tract of land aggregating 850 acres, more or less, and being in the 33d

district of originally Lee, now Chattahoochee county, Georgia."
Also, a deed from R. L. Wynn to E. J. Wynn, dated April 13,
1895, recorded December 2, 1895, consideration $750, conveying
a one-half interest in the same land, similarly described, except that
it concluded with these words: "Said lands known as the Wool-
dridge plantation on the Cusseta and Jamestown road." E. J.
Wynn testified, that he and his brother had been in possession of
the land so conveyed since the dates of their respective deeds, and
along with other lands had cultivated a considerable portion of lot
140; that he had considered he owned all the lot except 50 acres
in the southeast corner; and that while he did not know where
the line ran, he claimed all the land conveyed to him, which was all
the lot except 50 acres in the southeast corner. Recently he had
the fifty acres measured off and found defendants had located their
mill on plaintiffs' land, and there were between nineteen and twenty-
one acres of timber cut by defendants beyond the line of Howard's
fifty acres as shown by a survey thereof. The testimony of Howard
tended to show that at the time he purchased in 1872 Mr. Wool-
dridge, the common grantor of the predecessors in title of both
plaintiffs and defendants, had owned two places, one known as the
"Hardaway place," and the other as the "Wooldridge Home place,"
a part of lot 140 being in each of these places. He and his brother
purchased what was known as the Hardaway place, and at the
time they purchased it Mr. Wooldridge pointed out the line as
going to the edge of the woods, which were on the Hardaway
place, and were at that time surrounded by a fence which remained
for many years until it rotted or was burned down; and the line
of the place which he had thus purchased included all the woods
in the southeast corner. Mr. Wooldridge had previously deeded
his home place to his wife and children when he sold the Harda-
way place to Howard and his brother; and the line as pointed
out had always been recognized by them. He went into possession
of the Hardaway place in 1872, and the fence was not wholly de-
stroyed for twelve or fifteen years thereafter, and as recently as
five years ago there were signs of rails around the woods. He
had returned it for taxes as fifty acres of lot 140, and did not
know there were more than fifty acres until recently, when it had
been surveyed and measured. Under his purchase he had ac-
quired from Wooldridge all the Hardaway place, and the timber

in dispute was and had always been recognized as a part of the Hardaway place, and never as part of the Wooldridge home place. By a number of other witnesses, including several of the children of Mr. Wooldridge, it was shown that until they parted with the title and possession of the land, sometime prior to R. L. Wynn's purchase in 1893, they had always regarded the edge of the woods as the boundary line between the Wooldridge home place and the Hardaway place, and that Howard's land included the woods, and his line extended to the edge of the woods. The deed from Wooldridge to the Howards described the land as "lying and being in the 33d district of Chattahoochee county, known and distinguished in the plan of said district as the following lots and parts of lots," naming them, and including "fifty acres in the southeast corner of lot No. 140," which was followed by other matters of description. The jury returned a verdict for plaintiffs. The defendants filed a motion for a new trial, which being overruled, they excepted.

*Goetchius & Chappell, J. E. Chapman, C. C. Minter,* and *Herbert Howard,* for plaintiffs in error.

*S. B. Hatcher* and *J. H. Martin,* contra.

EVANS, P. J. (After stating the facts.)

1. The demurrer raises the question of the sufficiency of the description of the land upon which the trespass was alleged to have been committed. The petition alleged that the plaintiffs were the owners of land lot number 140 in the thirty-third district of Chattahoochee county, except 50, acres in the southeast corner, and that the defendants had cut and were proceeding to cut the timber thereon immediately surrounding the excepted 50 acres. Judicial notice will be taken, as to lots of land laid out by State survey in this county, that each contains 202½ acres, and is in the form of a square. *Huxford* v. *Southern Pine Co.,* 124 *Ga.* 182 (52 S. E. 439). A conveyance of 50 acres in the southeast corner of such a lot of land has been held to contain a sufficient description. The corner of the lot is to be taken as a base point from which two sides of the tract of land shall extend equal distances, so as to inclose by parallel lines the quantity of land conveyed. *Payton* v. *McPhaul,* 128 *Ga.* 510 (58 S. E. 50) ; Wilkinson v. Reper, 74 Ala. 40; Walsh v. Ringer, 2 Ohio, 327 (15 Am. D. 555). The petition therefore describes the land as lot 140

except a square in the southeast corner containing 50 acres, and the timber which it is alleged is being wrongfully removed was described as located on this lot of land immediately surrounding the quadrangular area excepted in the defendants' deed, and the description was sufficiently definite.

2. The first ground of the amended motion complains of the following charge to the jury: "The deed from R. L. Wynn to E. J. Wynn had the legal effect of vesting in E. J. Wynn one half undivided interest in all the land which R. L. Wynn had in the lots mentioned, among others, in all of lot 140 except 50 acres in the southeast corner of the lot. These lands are designated as the Wooldridge plantation on the Cusseta and Jamestown road; and those words, that is, that they are known as the Wooldridge plantation on the Cusseta and Jamestown road, are matters of further description of the land." The error alleged is that the deed described only conveyed such interest of R. L. Wynn "in so much of lot 140 as was included in what was known as the Wooldridge plantation, whether more or less than 50 acres of lot 140; and because the reference to the Wooldridge plantation was not a further description of the 50 acres, but 50 acres was a further description of the Wooldridge plantation;" and the description, "known as the Wooldridge plantation," was one of higher dignity and should prevail over the description "50 acres in lot No. 140." Where a deed contains two descriptions of the land conveyed, one general and the other particular, if there is any repugnance, the latter will prevail. Hannibal etc. R. Co. *v.* Green, 68 Mo. 169; 2 Devlin on Deeds (2d ed.), §1039; 5 Cyc. 880; Tyler's Law of Boundaries, 29; *Shackelford* v. *Orris,* 129 *Ga.* 791, p. 794 (59 S. E. 772). The description here was of definite lots and parts of lots; and under *Payton* v. *McPhaul,* 128 *Ga.* 510 (58 S. E. 50), all of lot 140 was conveyed except a square, embracing fifty acres in the southeast corner. The added words, "known as the Wooldridge plantation," were a general description, and must yield to the previous definite and particular description. It was therefore not error for the court to charge that this deed conveyed all of lot 140 except 50 acres in the southeast corner, and that the words "known as the Wooldridge plantation" were matter of further description. Nor do we, in the light of what has just been said, find any errors in the second, third, fourth, sixth, sev-

enth, and ninth grounds of the amended motion, complaining of certain charges of the court relative to the effect of the descriptions in the several deeds. Nor do we think he erroneously construed the contentions of the parties, or diverted the minds of the jury from the real contentions.

3. The eighth, tenth, and twelfth grounds of the motion complain of the charge of the court that if there was any agreement between the coterminous proprietors as to a dividing line, and that agreement continued for a period of twenty years, the effect of the agreement would be to establish the agreed line as the dividing line between the two tracts. This charge is alleged to be an erroneous statement of the law concerning conventional boundary lines, in that it includes as an element necessary to the validity of such an agreement an observance of it for a period of time not less than twenty years. On the subject of acquiescence the court charged: "In order for acquiescence to be binding on the parties, it must be shown by the evidence, in the first place, that there was an acquiescence, that is, both parties agreed that a particular place was the line between the 50 acres of lot 140; and not only having agreed to it, but that the agreement continued for a period of seven years or more, and possession was respectively had under such agreement." This charge is said to be erroneous, because it makes an agreement and possession under such agreement for seven years necessary to acquiescence, and because it confounds acquiescence with agreement. In *Farr* v. *Woolfolk*, 118 *Ga.* 277 (45 S. E. 230), this court pointed out the distinction between a dividing line established by acquiescence for seven years by acts or declarations of adjoining landowners as provided in the Civil Code, §3247, and a parol agreement between coterminous proprietors that a certain line shall be the true dividing line. Where there is room for controversy as to the location of a dividing line, the coterminous proprietors, independently of the cited code section, may orally agree upon the line; and if the agreement is accompanied by possession to the agreed line, or is otherwise duly executed, such agreement will be valid and binding, and the line thus defined will thereafter control their deeds. However, it is not necessary that possession under the agreed line should be had for twenty years, to give validity to the agreement, though the agreement derives additional weight from long ac-

quiescence.  A parol agreement between adjoining landowners to fix a boundary line between their respective tracts theretofore unascertained, uncertain, or disputed, is not within the operation of the statute of frauds, for the reason that no estate is created. When a boundary line is established by consent, the coterminous proprietors hold up to it by virtue of their title deeds, and not by virtue of a parol transfer of title.  Hugey v. Detweiler, 35 Pa. St. 409.  A line is not fixed or located by verbal agreement unless actual possession is had up to the line, or something be done to execute the agreement in the direction of physical identification, as the erection of monuments, fences, marking of trees, or the like.  But when adjacent landowners make a consentible line between their respective tracts, it is not necessary that possession be had to the line for twenty years in order to establish the agreed line as the divisional line.  In some jurisdictions a parol agreement between adjoining proprietors as to a dividing line is considered within the statute of frauds, and will not be enforced unless acted upon to such an extent as to make it inequitable for either party to set up the true boundary.  Meyers v. Johnson, 15 Ind. 261.  But in this State, on the authority of the cases cited in *Farr* v. *Woolfolk,* supra, and upon the strength of their reasoning, we have accepted the doctrine that in the case of disputed or uncertain boundary between coterminous landowners, an executed parol agreement is not within the statute of frauds and will suffice to establish a dividing line.  The charges to which exception is taken conflict with the view herein expressed, and to that extent are erroneous.

4.  But it was insisted on the argument, that even if the court did err in his instructions on the subject of establishing a dividing line by acquiescence or agreement, the errors were harmless, because the plaintiff purchased his land without notice that any divisional line had been established either by acquiescence for seven years by acts or declarations of his predecessor in title, or by any executed parol agreement.  There was evidence that at the time the plaintiff acquired his title, and even up to the trial, there were indications of the former existence of the fence along what the defendants claim is the line agreed to and acquiesced in by the plaintiffs' predecessors in title.  Indeed there was no serious conflict in the evidence that the line which the defendants claim to

was acquiesced in by the declarations and acts of the plaintiffs' predecessors in title while clothed with the title for more than seven years. Nor is it disputed that Mr. Wooldridge pointed out this line to Dr. Howard as the boundary between the Wooldridge home place and the Hardaway place at the time he bargained the latter tract to Howard. Although Mr. Wooldridge made a deed to his wife and children a few months before he executed the Howard deed, yet the trade with Howard was consummated the previous year. There can be no doubt, in a contest of boundary between two parties who have purchased adjoining tracts from a common vendor, that the line which their vendor had caused to be run as the dividing line between the two tracts before he sold them will be recognized as the dividing line between the parties mediately deriving title from him. Tyler on Boundaries, 335. Will such dividing line also bind their successors in title? If we are right as to our premise that an executed parol agreement between coterminous proprietors fixes the location where the estate of each owner is supposed to exist under his deed, and that each owner holds thereto by force of his deed, then the conclusion is irresistible that the consentible line identifies the boundary as defined in the contesting titles. Wood v. Crawford, 75 Ga. 733; Ingram v. Fisher, 70 Ga. 745. As was said in Miller v. McGlaun, 63 Ga. 435, "If there had been any dispute on the point where the true dividing line of the two lots ran, and by agreement of the coterminous owners thereof a line had been fixed on as such true line, whether the creek or any other, it can not be doubted that the parties could do so by verbal agreement, and such agreed line would bind subsequent holders under either, and that proof thereof could be made in parol." And it has been elsewhere held that an agreement fixing the location of a disputed boundary line between two adjoining landowners is binding on their respective grantees. Bartlett v. Young, 63 N. H. 265; 4 Am. & Eng. Enc. L. (2d ed.) 860; 5 Cyc. 940. By parity of reasoning, where the dividing line is located by the law, i. e., by acquiescence for seven years by acts or declarations of adjoining landowners (Civil Code, § 3247), such line becomes established as the true line between the adjacent tracts, and is binding on subsequent grantees. It would emasculate the force of the statute to hold that a line becomes established by seven years' acquiescence, but that subsequent grantees must

have notice that the line has been acquiesced in before they will be affected. When the line is once established so as to bind the present owners, their respective grantees will likewise be bound. Both parties claim under a common grantor; the plaintiffs' deeds cover all of lot 140 except 50 acres in the southeast corner, and Howard's deeds (under whom the defendants claim) cover the excepted 50 acres. Their respective title deeds embraced the whole of lot 140; and if the lines of demarcation had never been established or acquiesced in, the true line as ascertained by a survey would control the rights of these litigants. On the other hand, if the divisional line has been fixed either by an executed parol agreement of the coterminous proprietors, or by seven years acquiescence by acts or declarations of the adjoining landowners, then the boundary line located by the agreement, or by acquiescence, as provided by the statute, will be taken as the dividing line between the two properties. *Riley* v. *Griffin*, 16 Ga. 141 (60 Am. D. 726). *Judgment reversed. All the Justices concur.*