DELRAY INCORPORATED *v.* REDDICK *et al.*

No. 14186.   OCTOBER 12, 1942.

680

*Mitchell & Mitchell,* for plaintiff.

*Swift, Pease, Davidson & Swinson,* for defendants.

BELL, Presiding Justice. ■ The parties may be referred to herein as *plaintiff* and *defendant,* according to their positions in the trial court, the latter term meaning Reddick, who was the principal defendant, although several persons were named as defendants in the petition.

The general demurrer to count 1 was properly sustained. In this count the plaintiff sought relief as a bidder, claiming that it was entitled to have the property reoffered and the sale resumed at a certain point where the bidding was interrupted. If every question of law presented by the plaintiff as to the right of a bidder were resolved in its favor, it still could not prevail on the first count, because it does not appear that it ever became a bidder, as contended. A bid had been made by C. J. Camp, who it appears was president of the plaintiff corporation, but the allegations do not show that he was bidding in its behalf, or otherwise than as an individual. It is true the plaintiff alleged that it "tendered and continues to tender the amount of his bid of $550, which tender has been declined," and that petitioner was exercising a legal right to appear and bid on the property, and "has a right to have the property reoffered for sale, so that it may have an opportunity to continue to bid thereon;" but these averments were, as to any right of the plaintiff, mere conclusions of the pleader, and were insufficient to connect the plaintiff with the bid of Camp. It was nowhere alleged, directly or indirectly, that Camp was acting for the plaintiff; and when the allegations are construed most strongly

against the pleader, as must be done on general demurrer, the plaintiff, so far as the first count is concerned, appears to be a mere interloper. See *Krueger* v. *MacDougald,* 148 *Ga.* 429 (96 S. E. 867); *Hobbs* v. *Chemical National Bank,* 97 *Ga.* 524 (25 S. E. 348); *Greenfield* v. *Stout,* 122 *Ga.* 303 (50 S. E. 111); *Shingler* v. *Furst,* 176 *Ga.* 497 (168 S. E. 557)'.

■ In the second count the plaintiff sought relief, not as a bidder, but as the owner of the equity of redemption which it claimed to have purchased from the sole heir at law of the grantor in the security deed. We are of the opinion that this count stated a cause of action. In reaching this conclusion, several questions have required consideration, the first of which is whether the allegations were sufficient to show an improper exercise of the power of sale, so that it might be avoided at the instance of a proper party. "Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised." Code, § 37-607. In this case it appears that the sale was conducted through an auctioneer, by S. A. Reddick as the holder of the security deed. C. J. Camp appeared for the purpose of bidding. Also present were two named persons who were acting as agents and attorneys for Reddick. Camp and one of these agents made successive bids, after which the bidding was interrupted by the other agent of Reddick. Camp had just made a bid of $550, which was the highest bid at the time of the interruption. One of the agents asked the auctioneer if he had read all of the advertisement, or had he not left out a paragraph. The auctioneer replied that he had left out a paragraph; and though he was then and there requested by Camp to read the advertisement in full and to proceed with the sale, he declined to do so, stating that he would return to his office, study the advertisement, and sell the property at a later time. Camp then started away, requesting that he be notified of the time and place of sale, as he desired to bid further. Almost immediately the property was knocked off to one of the defendant's agents for $750. Camp protested, and stated that he was ready to bid a larger sum; but the auctioneer declined to reopen the bidding, and later during the same day reappeared at the court-house and attempted to resell the property to the defendant's agent at the sum which he had previously bid therefor. Following this, Reddick, as attorney in fact of the grantor in the security deed,

executed and delivered to himself a deed to the property in pursuance of the power of sale. Such, in substance, were the allegations as to the manner in which the sale was conducted. In such circumstances the power of sale was not fairly exercised, and therefore the sale thereunder was voidable and subject to annulment in equity, at the instance of a proper party. See *Bond* v. *Stephens,* 161 *Ga.* 140 (2) (129 S. E. 636); *Plainville Brick Co.* v. *Williams,* 170 *Ga.* 75 (2) (152 S. E. 85); *Henderson* v. *Willis,* 160 *Ga.* 638, 646 (128 S. E. 807).

■ The grantor in the security deed, as the owner of the equity of redemption, if she had remained in life, would have been the proper party to seek such relief. The plaintiff claims under a deed from the sole heir at law of the grantor, executed two days after the sale as made under the power of sale. Since the plaintiff is thus standing in the shoes of the sole heir at law, and has no other claim, the question arises as to whether the alleged irregularity and unfairness in the sale under the power appears to have been ratified or affirmed by such heir at law on or before her sale and conveyance to the plaintiff. This question is raised by the defendant, in view of the terms of the deed under which the plaintiff claims, as shown by the following allegations: "On October 9, 1941, Ruth Floyd sold and conveyed to petitioner all of her right, title, and interest, as the sole heir at law of Laurah Ramsey, in the real estate embraced in said loan deed, together with all her right, title, and interest in any funds derived from a purported sale of said property on the 7th of October, 1941, by S. A. Reddick, as attorney in fact for Laurah Ramsey, to S. A. Reddick." It is insisted that since Ruth Floyd, the sole heir at law, thus conveyed "all her right, title, and interest in any funds derived from" the alleged unlawful sale under the power, she thereby ratified and affirmed the sale; so that the plaintiff, as her vendee, was merely entitled to any excess in the proceeds over the amount of the debt, and could not complain of any irregularity or unfairness in the manner in which the sale was conducted. We can not sustain this contention. Under the terms of the deed as stated, Ruth Floyd, the sole heir at law, conveyed all of her interest in the land, together with all of her right, title, and interest in any funds derived from the purported sale. The deed was not a communication to the defendant or to any one for him, and on proper construction it amounted to

a conveyance of whatever right Ruth Floyd, as the sole heir at law, had either to affirm or disaffirm the alleged unlawful sale as made by the defendant under the power of sale. Had the grantor intended to ratify the sale, and to transfer or convey to the plaintiff only a right to claim the excess in the proceeds over the indebtedness secured by the loan deed, the words "all of her right, title, and interest . . in the real estate embraced in said loan deed" would have been entirely superfluous. They were evidently intended as a conveyance of land; and under this deed the plaintiff acquired the right either to affirm the sale and claim the excess in the proceeds, or to disaffirm and seek to recover the land, provided such right had been inherited by the heir at law, and was such a right that she could sell and convey by a deed to the land.

■ As shown in divisions 2 and 3 above, under the allegations of fact the sale and conveyance made by the defendant Reddick, in pursuance of the power of sale, could have been avoided by the grantor in the security deed, as the owner of the equity of redemption, if she had remained in life. While in one sense such right to disaffirm might have been personal to the grantor, yet under the facts alleged it would have amounted to an equitable interest in real estate; and since the grantor in the security deed had died intestate before the date of the sale, the equity of redemption descended by inheritance to the sole heir at law, with the same right to affirm or disaffirm an unlawful sale thereafter made which the grantor herself would have had if she had not died. Code, § 113-901; *Egan* v. *Conway,* 115 *Ga.* 130 (3) (41 S. E. 493); *Dunson* v. *Lewis,* 156 *Ga.* 692 (119 S. E. 846); *Stonecypher* v. *Coleman,* 161 *Ga.* 403, 409 (131 S. E. 75); *Weems* v. *Kidd,* 37 *Ga. App.* 8 (138 S. E. 863). The plaintiff is asserting the right to disaffirm as a purchaser from such heir at law under a deed executed only two days after the sale under the power. While the right to disaffirm, by whomsoever claimed, must be exercised within a reasonable time, such right was not lost merely by lapse of time when the period was only two days. Nor can it be said that the right was not seasonably exercised by the filing of the instant suit about six weeks afterward, where, so far as appears, nothing happened in the meantime, except the passage of time, in reference to the matter. It is insisted, however, that the right to disaffirm, if it existed at all in the sole heir at law, was one of such nature that it

could be exercised only by her in person as the owner of the equity of redemption, and that it could not be sold and conveyed to another. On this question, various authorities have been cited by counsel. Among other decisions relied on by counsel for the defendant are *Williams* v. *Williams,* 122 *Ga.* 178 (50 S. E. 52, 106 Am. St. R. 100); and *Payton* v. *McPhaul,* 128 *Ga.* 510 (58 S. E. 50, 11 Ann. Cas. 163). In the *Williams* case, it appeared that the holder of a judgment rendered on April 5, 1899, sought to disaffirm a sale made on January 10, 1899, under a power of sale in a mortgage executed in 1897. It was held that the creditor, whose judgment was junior both to the mortgage and to the sale made thereunder, could not disaffirm the sale, although it might have been avoided by the mortgagor on the ground that the mortgagee had purchased at his own sale under power, without authority. It was said broadly that the right to disaffirm such a voidable sale is personal to the mortgagor; but on the facts of the case this statement was unnecessary to the conclusion reached, and the same is true of other language there employed.

In *Payton* v. *McPhaul,* supra, it was held that "A purchaser at an execution sale subsequently to the sale under the power, the execution being based on a judgment rendered after the execution and record of the mortgage, will not be allowed to impeach the purchase by the mortgagee at his own sale." Neither does that decision cover the facts here under consideration. It was further stated in that case that the sale under the power was voidable at the instance of the mortgagor or the owner of the equity of redemption at the time of the sale; and so under that decision we would still have the question as to whether "the owner of the equity of redemption at the time of the sale" could sell and assign his right to disaffirm, after the sale had taken place; this being the question that is now presented.

Counsel for the defendant cited also McCall *v.* Mash, 89 Ala. 487 (7 So. 770, 18 Am. St. R. 145), which on the surface appears to support the negative view. In that case it was held that a sale of land under a power contained in a mortgage, at which the mortgagee himself becomes the purchaser, is not void as to the mortgagor, but only voidable; and that until the latter disaffirms the sale he has no interest in the land which he can convey. That decision was rendered in 1890. The reasoning is strong, and it might

perhaps have been applicable in this State before the Code of 1895, § 3079, in which the following provision was inserted: "A right of action is not assignable if it does not involve, directly or indirectly, a right of property; hence a right of action for personal torts or injuries arising from fraud to the assignor can not be assigned." Compare Code of 1933, § 85-1805. In *Sullivan* v. *Curling*, 149 *Ga.* 96 (99 S. E. 533, 5 A. L. R. 124), it was held that a change in the law was thus effectuated; and that in view of it, a chose in action arising from a tort is assignable where it involves, directly or indirectly, a property right. The decision in the *Sullivan* case is also authority for the proposition that the deed from the sole heir at law to the present plaintiff, conveying all of her right, title, and interest in the land, was sufficient in its wording as an assignment of the right to disaffirm. See also Code, §§ 29-107, 29-301, 85-1803; *Reed* v. *Janes*, 84 *Ga.* 380 (11 S. E. 401); *Tucker* v. *McArthur*, 103 *Ga.* 409 (30 S. E. 283).

Decisions in other jurisdictions as to such right of assignment appear to be in conflict. For general statements and citations, see 35 C. J. 108, § 180; 41 C. J. 981, 1006, 1023, 1031, §§ 1431, 1461, 1488, 1493; 42 C. J. 359-360, § 2093; 37 Am. Jur. 124, 408-9, §§ 673, 1150. As opposed to the Alabama case of McCall *v.* Mash, supra, we would especially mention Houston *v.* National Mutual Building & Loan Association, 80 Miss. 31 (3) (31 So. 540, 92 Am. St. R. 565), where it was held that the grantee in a quitclaim deed executed to mortgaged premises by the mortgagor *after* a foreclosure sale thereof under a power in the mortgage, and the illegal purchase of the property by the mortgagee, may maintain a suit to redeem; the right of redemption not being limited to the mortgagor and those claiming under him at the date of the alleged illegal sale. In that case the Supreme Court of Mississippi took direct issue with the Alabama decision, and declined to follow it. The court also discussed certain statutes and principles which accord in a general way with the present law of this State, as enunciated in *Sullivan* v. *Curling*, supra. The case is not altered by the fact that the court had appointed a mere temporary administrator of the estate of the deceased grantor in the security deed. Code, § 113-907; *Doris* v. *Story*, 122 *Ga.* 611 (50 S. E. 348); *Babson* v. *McEachin*, 147 *Ga.* 143 (93 S. E. 292).

On the facts alleged, the plaintiff, as a purchaser from the person

who owned the equity of redemption at the time of the alleged sale under the power, was entitled to have the sale annuled for irregularity and unfairness, and to the relief of cancellation as prayed, having duly offered to do equity, and the disaffirmance being seasonable, so far as appears. The court erred in sustaining the general demurrer as to the second count.

Whether the decision in *Bond* v. *Stephens,* 161 *Ga.* 540 (supra), would sustain the right of the plaintiff in this case, and whether that decision is consistent with *Payton* v. *McPhaul,* 128 *Ga.* 510 (supra), need not be determined; nor is it necessary to discuss other decisions, whether cited by the plaintiff or the defendant, as the conclusion reached is deemed to accord with all of such decisions.

*Judgment reversed. Reid, C. J., and Jenkins and Duckworth, JJ., concur.*

GRICE, Justice. I dissent from the rulings in the third and fourth headnotes and from the corresponding divisions of the opinion, and hence from the judgment of reversal. The grantor in the security deed being dead at the time of the sale, I think that one who thereafter acquired from her sole heir at law a conveyance of the property did not thereby obtain a right to attack a voidable sale under the power. Such sale passed the title, although a defeasible title. The sounder view of this question, in my opinion, was that stated in McCall *v.* Mash, 89 Ala. 487 (7 So. 770, 10 Am. St. R. 145), where it was written: "Where a mortgagee has purchased at a sale under a power contained in the mortgage, without the consent of the mortgagor, the latter has a right, within a reasonable time, to disaffirm the sale, and ask redemption and an account of the rents and profits; but if he takes no steps to disaffirm the sale, he can not assign, sell, nor convey the land so as to vest in his assignee the right to disaffirm the sale, and redeem in his own name."

While the facts in *Williams* v. *Williams Co.,* 122 *Ga.* 178 (50 S. E. 52, 106 Am. St. 100), were different, the same principle was involved. That case, it seems to me, aligned this court with those that hold that the right to disaffirm a voidable sale is a personal one; and if this view of that decision be correct, it would seem logically to follow that the present plaintiff can not be heard to disturb the sale. In the *Williams* case an effort was made by a

judgment creditor to avoid a voidable sale, under power, of the property of his debtor. As to that, this court said: "The mortgagor could ratify an irregularity in the execution of the power; or he could within a reasonable time disaffirm. But at the sale title, even if defeasible, passed, and as long as he remained silent, he was bound, and he being bound, so were his privies in estate." The first headnote in that decision lays down the principle which led the court to deny the creditor the right attempted to be asserted, in these words: "The right to disaffirm a voidable sale is personal to the mortgagor." In a later case this court, on a different state of facts, said: "Neither a judgment creditor of the mortgagor whose judgment is rendered subsequently to the execution and record of the mortgage, nor a purchaser at the sale under such a judgment subsequently to a sale under the power, is allowed to impeach a purchase by the mortgagee at his own sale." *Payton* v. *McPhaul,* 128 *Ga.* 510, 517 (supra).

The editor of a work frequently relied on as an authority treated the decisions of this court as having the same alignment of this question as that just indicated, for in 37 Am. Jur. § 673, the statement is made that the right to disaffirm a sale of the character here involved is personal to the mortgagor, and can not be exercised by his transferee in interest, citing therefor the two Georgia cases hereinbefore referred to.

When it is a case of first impression in this court, and the decisions from other jurisdictions are in conflict, as pointed out in the leading opinion, I am the less reluctant to yield my views to those of the majority as to which of the two conflicting rules should by this court be followed; but under the holding in the *Williams* case, supra, it would apparently add uncertainty to our law to hold, as the court does in the instant case, that the right to disaffirm such a sale is not a personal one but that it passes under a deed afterwards made, conveying the property. Assuming for the moment that the sole heir at law could do so, the grantor in the security deed being dead, the fact is that she took no steps to defeat the defeasible title which the purchaser at the sale acquired. Her inaction perfected that title, and therefore she as sole heir at law had none to convey. The right now sought to be asserted did not pass to the plaintiff by the deed she executed to him.