## HENDERSON *et al. v.* WILLIS *et al.*

1. While the date of filing endorsed on the bill of exceptions shows that it was filed in the office of the clerk of the superior court prior to the date of certification by the trial judge, as a matter of fact it was filed subsequently to the certification, and the mistake in the true date of filing is shown by the certificate of the deputy clerk and the affidavit of the person who was clerk of the court at the time of filing the document. The mistake in the date of filing having been sufficiently corrected, the bill of exceptions will not be dismissed upon the ground that it was filed prior to the certification of the judge.

2. Where one was made a party defendant in the court below and a verdict was returned in favor of the defendants, and the party referred to joined in a motion for a new trial, and it was made to appear that his true interests were adverse to the verdict as returned, he was properly made a party plaintiff to the bill of exceptions.

3. A tender of money "must be certain and unconditional, except for a receipt in full or delivery of the obligation." Civil Code of 1910, § 4322. And the tender made by the plaintiff in this case, upon the condition that a certain security deed be transferred to her, was not an unconditional tender.

4. Where a tender of money is made but is insufficient in that the exact amount due is not tendered, but the party making the tender makes it in good faith, thinking it is the amount due, and is ready, willing, and able to pay the full amount actually due, but the agent of the creditor, appointed to sell the property for the purpose of making the money due his principal, to whom the tender is made, declares that he is without authority to receive the money, and would not receive it, no further tender is necessary to make the same good in law.

5. Where a donee of a power of sale contained in a deed to secure a debt seeks to exercise the power, the property should not be brought to sale under an advertisement of such sale which is published in violation of an injunctive order of the court, as this would naturally tend to prevent the property advertised and offered for sale from bringing its fair market value, although the injunction be dissolved a few hours before the sale.

6. The payment of the purchase-money is generally necessary to constitute a bona fide purchaser for a valuable consideration.

No. 4663. MAY 14, 1925. REHEARING DENIED JULY 18, 1925.

Equitable petition. Before Judge Eve. Irwin superior court. October 11, 1924.

*Eldridge Cutts, Wilson & Bennett, Philip Newbern, Quincey & Rice,* and *John M. Graham,* for plaintiffs.

*Hendricks & Hendricks, Patterson & Copeland,* and *Rogers & Rogers,* for defendants.

BECK, P. J. This was an equitable petition to enjoin the consummation or completion of, and to set aside, a sale of certain land in Irwin County, under a power of sale contained in a security deed made by J. A. J. Henderson to Ashley Trust Company. The defendants were Ashley Trust Co. and John M. Willis, the purchaser at the sale; Waldo Henderson and J. A. J. Henderson also being named by amendment as parties by reason of their interests in the property. It appears that J. A. J. Henderson was the owner of a piece of residence property in Ocilla, and made a security deed to the same to Ashley Trust Co. With the title thus encumbered he made a conveyance thereof to his son, Waldo Henderson. About four years after the making of the conveyance to Waldo Henderson, the latter made a security deed of the same property to the plaintiffs to secure an indebtedness of $11,287.17. The deed of J. A. J. Henderson to Waldo Henderson recited that the original bond for reconveyance from Ashley Trust Company was lost or destroyed and not in his possession, but in the conveyance itself was recited a transfer of the bond and all rights thereunder. On account of the loss of the bond, there was on the back of the deed from J. A. J. to Waldo a transfer and assignment thereof to plaintiffs, as well as the separate security deed to plaintiffs. The conveyance was subject to the original security deed. In the latter part of 1922 the husband of Mrs. Rowena Henderson and her attorney, acting for her and Mrs. Luke, visited

the officials of the Ashley Trust Company in Valdosta, being fully prepared to pay in full the balance of this secured indebtedness (the same having been assumed by plaintiffs), and offered to pay the same. They were fully informed of the fact that the original bond for title (if any, in fact, was issued) was lost or destroyed; that in view of its loss Mrs. Henderson and Mrs. Luke, through said agent and attorney, offered to furnish all necessary affidavits or other proof required to that effect, and also to give bond to indemnify the company against any loss on account of such bond outstanding. The company would not accept such payment unless by merely canceling their paper, being unwilling to make any transfer of it at all, even without recourse. But before giving such matter a final decision the company had taken it under consideration. While this was under consideration and correspondence pending with reference to it, an equitable petition was brought by Wilcox, Ives & Company and J. T. Norman & Company against Ashley Trust Company, J. A. J. Henderson, and Reason Henderson, in which the plaintiffs prayed for an injunction to prevent Ashley Trust Company from transferring its deed or in any way changing the status, and for a receiver for the property. On the trial of the present case D. R. Henderson testified that plaintiffs had been served with an order of injunction and notified of it, and thought they were made parties to it; and this evidence was not contradicted. The restraining order granted in the case was in full force and effect until on the morning of the sale, and in fact just a short while before the sale took place that is involved in this case. The sale was advertised to take place and did take place on November 12, 1923. While this advertisement was being published, negotiations were pending between the plaintiffs or their representatives and others more or less indirectly interested in the property. In the afternoon of November 12, while the superior court of Irwin County was in session, D. L. Rogers, an attorney at law, announced that the Ashley Trust Company had instructed him to conduct the sale of the property, and he did offer the property for sale under the power of sale. Plaintiffs tendered the amount still due on the Ashley Trust Company claim; the larger part of this had been paid. The tender made to Rogers, who was conducting the sale, was refused, and the property was knocked down to J. M. Willis for $6,000. Before the money was

paid by Willis or a deed made to the successful bidder, this petition was filed and a temporary restraining order granted. Upon the trial of the case a verdict was directed for the defendants. The plaintiffs made a motion for a new trial, in which error is assigned upon the direction of a verdict. In this motion Waldo Henderson, who had been made, by an amendment to the petition, a party defendant, joined with the plaintiffs. The motion was overruled, and the plaintiffs excepted.

1. A motion was made to dismiss the bill of exceptions in this case, upon the ground that it appears from the endorsement of the clerk of the superior court that the bill of exceptions was filed in the clerk's office before it was certified by the trial judge, and was never thereafter filed; and upon the further ground that by amendment Waldo Henderson was made a party defendant with J. M. Willis and other defendants in the court below, and that, being benefited by that verdict, he can not be made a party plaintiff in the bill of exceptions,—that he can not "shift his position from that of defendant in error to plaintiff in error." As to the first ground, the contention of the defendant in error is met by these facts appearing in the record: While it is true the date of filing in the clerk's office is given as November 5, 1924, and the date of certification by the trial judge as November 22, 1924, there is a certificate in the record of Mattie W. Moore, deputy clerk of the superior court of Irwin County, to the effect that the original bill of exceptions in the case was filed in the clerk's office on December 5, 1924, and that the date November 5, 1924, was erroneous; and also in the certificate is an explanation of how the mistake arose. There is also an affidavit made by Thomas Harper, who was clerk of the superior court during the year 1924, but whose term expired with the end of that year, and in this he deposes that he read the certificate of the deputy clerk, and that the facts stated therein are true. In view of these statements in the certificate and affidavit, the mistake as to the date was corrected, and the real date of filing, December 5, 1924, is shown. "If any mistake shall be made by any clerk of the superior court in his entry of filing the bill of exceptions in any case, and it has been made to appear to the Supreme Court, said court shall take any necessary and proper constitutional order to secure the correction of such mistake, and a hearing of the case."

Civil Code, § 6189. The clerical error in the date of filing the bill of exceptions in the office of the clerk of the superior court has, upon motion duly made, been corrected, and the bill of exceptions will not be dismissed upon this ground. *Credit Clearing House* v. *Wheeland Co.,* 18 *Ga. App.* 475 (89 S. E. 634).

2. As to the second ground of the motion to dismiss, we are of the opinion that while Waldo Henderson was made a party defendant by amendment to the petition filed subsequently to the bringing of the action, it was to his real interest that there should have been a verdict for the plaintiffs; and the verdict directed being in favor of the defendants, he was interested in setting that verdict aside. This is the position that he took in joining with the plaintiffs in the motion for a new trial, and his position is supported by the evidence in the case and is shown by the pleadings, although he was named a party defendant. Consequently the motion to dismiss the writ of error is overruled.

3. One of the questions involved in this case is whether, in the month of January, 1923, ten months prior to the date of the sale of the lands involved in this case, the plaintiffs had made a sufficient tender of the balance due on the debt the payment of which was secured by the deed from J. A. J. Henderson to Ashley Trust Company. The allegations as to the circumstances under which this tender was made and the character of the tender are shown in the amendment to the petition filed on February 19, 1924, and are as follows: "In the month of January, 1923, your petitioners sought to pay off the indebtedness to Ashley Trust Company, constituting the first lien on said premises and which they had assumed as alleged in the original petition. For this purpose an authorized agent and attorney for these petitioners, to wit, D. R. Henderson and H. G. Rice, attorney, went to the City of Valdosta to see the officials of said Trust Company and did confer with the officials who then had the matter in charge in behalf of said Trust Company, to wit, Mr. —— Wynn, an official of said company, and J. B. Copeland, a member of the firm of Patterson & Copeland, attorneys for said Trust Company, and in said conference it was fully explained to said officials as to the full details of the transactions since the making of their loan to J. A. J. Henderson on said premises, the interest of said Henderson having passed to Waldo Henderson and the security conveyance from said

Waldo to these petitioners; that the original bond for reconveyance from said Trust Company to said J. A. J. Henderson had been lost but never was transferred to anybody, and therefore its absence could not affect said Trust Company, and the offer was made to furnish any kind of evidence necessary to satisfy said Trust Company of these facts; and with this information an offer was made to pay said Trust Company in full the principal and interest of its debt against said property as originally embraced in said loan to J. A. J. Henderson, subject to deduction of payments already made, that is to say, the full amount of the balance due said Trust Company. The said officials of said Trust Company stated that they were uncertain whether they could accept it or not unless the bond for reconveyance was delivered up, or unless the security deed was merely canceled instead of being transferred to petitioners as was requested, but stated that they would take the matter under consideration and inform petitioners if they would accept such payment and make such transfer, but they never did agree to accept such payment." Construing the allegations of the petition most strongly against the pleader, we are of the opinion that the tender here pleaded was not sufficient, under the law. While the allegations are not very clear and precise, it is inferable that the officials of Ashley Trust Company objected to the tender on the ground that the plaintiffs did not offer to deliver the bond to reconvey, and that the tender was coupled with the condition that the security deed held by the company should be transferred to petitioners. While the company had the right to demand that the bond to reconvey should be delivered, or that it should be clearly shown that it was lost, or that a bond to indemnify them should be given unless that was done, they also had the right, though the bond was shown to be lost, to refuse the tender which was coupled with a condition that they should transfer the security deed to the party making the tender. Under all the facts pleaded, the court was authorized to hold that no proper binding tender was made to Ashley Trust Company.

4. But we are of the opinion that the jury were authorized, under the evidence, to find that a tender had been made to Rogers, who, under authority given him by the holder of the security deed with a power of sale, was conducting the sale, and that the tender made to him was unconditional. And if it was not for the exact

amount of the debt then due, no further tender was necessary when this agent of the holder of the security deed declined to receive the money upon the ground that he was without authority to do so. J. H. Dorminey, a witness for the plaintiffs, testified in part that he was present in Ocilla on the day of the sale of the property in question; that he had money with him on that day to settle the debt with; that he was acting for Mrs. Henderson (the plaintiff); that he got the money from Mr. Cutts (attorney for Mrs. Henderson); that he called aside Mr. Rogers, who was conducting the sale for the Trust Company, and told him that he had the money to pay off the claim under which he was selling the property; and that Mr. Rogers did not accept it, but continued to offer the property for sale. Mr. Cutts testified in part: "Mr. Dorminey called Mr. Rogers, who was conducting the sale, aside, and they stepped inside the court-house door at the entrance there, and they talked for a short time, and I saw Mr. Dorminey pull out that roll of money I had given him and offer it to Mr. Rogers. I could not hear what words passed between them. I saw Mr. Rogers kinder push it aside that way [indicating], declining to accept the money, and then he started returning to the front of the court-house. Just as he came to where I was and Mr. Dorminey was alongside of him, still insisting that he take the money, I then took the money out of Mr. Dorminey's hands and exhibited it to Mr. Rogers, and I started to tell him what I was tendering it to him for, and who I was tendering it for, and Mr. Rogers interrupted and would not give me time to tell him anything about it. Mr. Rogers just waved me aside and said, 'I have not got any authority to accept any money at all; all I can do is cry off the property,' and then he walked out and said, 'It is knocked off to Mr. Willis for $6,000. . . I was undertaking to tender the money for Mrs. Henderson and Mrs. Luke. And then Mr. Rogers immediately after the sale came up here in the court-room, just a minute or two afterwards, and he made some remark that I did not tell him who it was for, and I then did tell him, and it was just a few minutes after the sale. No deed had been made up to that time. I then stated to Mr. Rogers in the court-room that I was making that tender for Mr. Henderson and Mrs. Luke (Mrs. Henderson I refer to), on account of their having this second lien; and then I remained here for a few minutes."

Under this evidence the jury would have been authorized to find that an unconditional tender was made to Rogers, the agent of the holder of the security deed to sell the property; and we are of the opinion that this was equivalent to a tender to the holder of the security deed containing the power of sale. For while it may be true that Rogers was merely a special agent, the agency to sell included the power to receive payment of the debt to secure which the deed had been executed. There is some evidence that Rogers was merely the mouthpiece for Ashley Trust Company to cry off the property. It does not appear that any other representative of the company was present. The power of sale in the deed to that company authorized them to sell this property upon the happening of certain contingencies. The sale was in the exercise of this power; and when the company appointed an agent to sell the land under the power, they were appointing an agent to exercise that power, and the plaintiffs in the case had the right to pay off the debt secured by the deed because of their interest in the property, and they had the right to make this payment up to the very moment of sale and before the sale was completed. Ashley Trust Company was located in another county. The power with which they were vested was being exercised by their agent at Ocilla, in Irwin County. The plaintiffs had the right to stop the sale by any legal means before the property was knocked off. One of the ways in which this sale could be stopped was by payment of the balance. This was their legal step, and they attempted to take it. The only way in which it could be made effective was the payment to the agent of the company who was actually offering the property for sale. And however limited the agency in other respects might be, it was necessarily broad enough to include the power to deal with the plaintiffs in an honest, legal effort to satisfy the demands of the creditor and save their own property. See *Porcher* v. *Pearsons-Taft Land Credit Co.*, 154 *Ga.* 483 (114 S. E. 634). It does appear from the evidence that the amount of the tender was not the exact amount due, but the jury might have found that the plaintiffs or their agents were offering to pay the full amount due; that they offered in good faith what they thought was due and were willing to pay the amount actually due, but did not tender more because the agent of Ashley Trust Company would

not receive it, declaring that he had no authority to receive it and was there merely to sell the property. His statement that he did not have authority to receive the payment and would not receive it removed the necessity for further tender.

5. But there is another and compelling reason upon which we base our opinion that the court erred in directing the verdict. The advertisement of the sale of this property under the power contained in the security deed to Ashley Trust Company was run while there was pending an injunction against any act upon the part of the Ashley Trust Company which would change the status of the property. The advertisement was made in defiance of the injunction of the court, and a legal sale of the property with that injunction pending could not be made. But it is said that these plaintiffs were not parties to the equitable petition under which the injunction just referred to was granted, and that is true; but they had been served with notice of that injunction and could well believe that a sale would not take place under an advertisement which was a violation of the injunctive order of the court. The injunction was not dissolved until the day upon which the sale took place, and members of the public who might have been able to purchase the property and pay a fair price therefor, and who might have been desirous of purchasing property in that locality, might well have been of the opinion that a sale under those circumstances would not be a valid one, and that the purchaser at such a sale could not get an incontestable title. The pendency of that injunction, if not a cloud upon the title, was a threat and a menace to the title of a purchaser at the sale, and the existence of such a fact would naturally tend to cause the property to sell for less than its value. A sale like this one, under a power of sale, should not be so conducted as to injure those having such an interest in the property as there is evidence to show these plaintiffs had. Whether the evidence is in favor of the bona fides of the transactions between the plaintiffs and their grantor, and whether their title is tainted by fraud, are questions for a jury to settle. But there was evidence which would authorize a jury to find that the plaintiffs had a real interest in the property under the deed executed to them by Waldo Henderson, and such an interest as gave them the right to demand in a court of equity that the sale

should not take place under such circumstances as would prevent bidders from offering the actual value of the property.

6. It is insisted in the brief of counsel for defendants in error that the court properly directed a verdict, because the grant of an injunction would have injuriously affected the rights of J. M. Willis, the purchaser at the sale, occupying the position of an innocent purchaser for value. Several replies might be made to this contention, but one is sufficient; and that is, the defendant Willis did not occupy the position of an innocent purchaser for value. The deed had not been made to him by the donee of the power of sale, and he did not pay the purchase-money. Citation of authorities is hardly necessary to show that he is not in the position of an innocent purchaser for value; however the case of *Mackey* v. *Bowles,* 98 *Ga.* 730 (25 S. E. 834), may be read, as this subject is there discussed with some thoroughness. In that case authorities are quoted approvingly, laying down the rule that actual payment of the purchase-money is generally necessary to the character of a bona fide purchaser for a valuable consideration. See also *Donalson* v. *Thomason,* 137 *Ga.* 848 (74 S. E. 762).

*Judgment reversed. All the Justices concur, except Gilbert, J., absent for providential cause.*