The court did not err in overruling the motion for a new trial for any of the reasons assigned.
 DECIDED SEPTEMBER 9, 1947.
John P. and Evelyn Witter, husband and wife, hereinafter designated as the defendants, filed a suit in the Civil Court of Fulton County against James E. Carroll, hereinafter designated as the plaintiff. The petition, omitting the formal parts, alleges:
"The defendant, designated here as the plaintiff, James E. Carroll, is indebted to petitioners in the just and full sum of $600, plus interest, for money had and received as will be shown more fully hereinafter.
"On or about December 28, 1946, your petitioners paid to James E. Carroll $200 and on or about January 2, 1947, paid to him $400, upon the representation by Carroll that he would use the $600 for making certain alterations in his home at the address stated in Fulton County, Georgia, 78 5th Street, N.W., Atlanta, Georgia, to provide a three room and bath apartment for them.
"It was stipulated by Carroll that said $600 would be applied to future rent on said apartment at the rate of $75 per month.
"The defendant Carroll promised your petitioners that the said apartment would be ready for their occupancy by January 15, 1947.
"The defendant Carroll further promised to return to petitioners their $600 in full if the apartment were not ready by January 15, 1947.
"The said apartment was not ready for petitioners' occupancy on January 15, 1947, and is still not ready for their occupancy.
"Your petitioners have made numerous demands on the defendant Carroll for the return of their $600 and he has refused and continues to refuse to return the same to them.
"Your petitioners further show that the defendant Carroll has acted in bad faith and has arbitrarily withheld from them their *Page 633 
money and caused them the unnecessary trouble and expense of bringing this action.
"Wherefore, your petitioners pray: . . That your petitioners have judgment against the defendant Carroll for $600, plus interest, and, in addition thereto, damages under section 20-1404 of the Georgia Code (1933)."
No defensive pleadings were filed. The case was tried before a judge of the Civil Court of Fulton County, without the intervention of a jury. A verdict and judgment was rendered in favor of the defendants. To this judgment the plaintiff excepts and brings the case directly to this court for review, on the general grounds only.
The evidence shows substantially: Mrs. Evelyn Witter testified: "I am the wife of John P. Witter. . . You ask that I explain to the court the transactions leading up to my giving the defendant Carroll $600 back in the early part of this year. My husband was discharged from the Navy. . . We decided to come back to Atlanta and make this our home. We didn't have any place to live and that's the first thing we started to do. We put an advertisement in the paper and Carroll called us and asked us to come down and see him, he had an apartment. We went down, he explained the situation and showed us what it was. He showed us a very incomplete basement that he was making over and asked eight months rent in advance from us and we gave it to him and he said he would have the apartment ready for us January 15th, and if not we would have our money refunded in full immediately, and we wrote that into the lease, and of course, it wasn't done. I saw the apartment at that time. It was not an apartment at that time. It was a basement with a few partitions, that's all. None of the partitions had been actually completed and there was no flooring in any of them. . . I don't remember the exact date, but it was about January 3rd, 4th or around there. He told us very definitely that the apartment would be ready January 15th. We went back on January 15th to move into our apartment and it was not ready. It was in just about the same condition except there were a few pipes for plumbing that wasn't finished, and a few more partitions. There were no bathing facilities and no sinks, no nothing, just pipes and only a few of them. There was no floor in the apartment. I believe there were a few more walls, *Page 634 
but all the walls weren't completed. We looked the place over and decided that Mr. Carroll could not possibly have it ready for us, I mean it wasn't ready. . . He [meaning Carroll] didn't want us to move in because it was not livable, but he wanted us to hold off another ten days and he promised it would be ready then. We said no, we wanted our money. We asked him for our money and he did not give it to us. He said he didn't have it, and we told him he had better get a loan or do something, because we needed the money much more than he did. We have asked him for it since then, again and again . . and we still haven't gotten a cent of our money." On cross-examination the same witness testified: "He told me at the time that it would take that amount of money to finish the apartment. . . He told us we could go upstairs a day or two if we didn't want to move in there, until he got it fully completed, but we didn't accept, we had a room. . . He offered us his front room couch to sleep on while that apartment was being finished. As to whether they were working on it at that time, there was one man, his friend. He didn't have any money to pay anybody else to work on it. I know that because he told us. . . I understood when we made the contract that the apartment would be livable January 15th, if not we would have our money refunded in full immediately. . . I gave Mr. Carroll $600 and he said that that $600 would be for our rent at $75 per month."
John P. Witter, the husband, testified as follows: "I was present with my wife at the time the $600 was handed to Mr. Carroll, and I was present when we went around to occupy this apartment January 15th. The apartment was not ready for occupancy. At that time we had a room to live in on 15th street. The apartment was to be ready January 15th. He assured me it would be ready January 15th. He agreed that if it wasn't ready January 15th he would give me back the money immediately."
James E. Carroll testified in his own behalf as follows: "I made every effort to complete the apartment according to the contract. I was supposed to have it completed the 15th of January, I believe, and it was completed, not a hundred per cent, but it would have been completed in a few days. . . As to whether I had any floors in it on the 15th of January, well, we had it ready to pour. It was a concrete floor. I don't believe there was any sink in it. *Page 635 
There was no bath tub in it and there was not going to be any, it was going to be a shower. The plumbing was all roughed in, all we had to do was to hook the pipes to it, the shower overhead. . . I told them at the time, I said I haven't got the money now, — you knew at the time you let me have the money I was going to use it in the construction of the apartment. I said I can't possibly get it up for you until I can raise money through a loan or some other means. . . I have not raised the $600 yet."
The plaintiff contends that the house was livable on January 15th, but we think that the judge was authorized to find from the evidence that it was not livable at that time, as the plaintiff himself admitted that there were no floors, no bathtub or shower, no plumbing, and no sink. It does not, therefore, seem that the apartment was livable when the specified time for occupancy arrived, which time is not disputed by either party. It is clear that each party understood the agreement and there is no dispute as to the interpretation of the terms, or the time of consummation. No "reasonable time" is involved, but aspecific time, January 15th, is shown in the testimony to be the time at which the apartment was to be delivered to the defendants for occupancy. Therefore the case ofNorthington-Munger-Pratt Co. v. Farmers Gin Warehouse Co.,119 Ga. 851 (47 S.E. 200, 100 Am. St. R. 210), cited by the plaintiff, does not apply to the facts of this case.
Also, the facts in Henderson v. Willis, 160 Ga. 638
(128 S.E. 807), are not such as would aid or harm the plaintiff in the instant case, as a cursory reading of the case, an equitable petition to enjoin completion of a sale of land, will differentiate it from the facts of the instant case.
Likewise, the case of Rice v. Ware, 3 Ga. App. 573
(60 S.E. 301), does not apply, as the parties in the instant case certainly did not come to a point which was a mutually satisfactory compliance with the spirit of the terms of the agreement.
Neither can this court agree with the proposed premise that the noncompliance in the instant case be legally justified and controlled by the case of Hixon v. Cubine, 182 Ga. 446
(185 S.E. 714), wherein the facts are entirely at variance with the facts of the instant case. *Page 636 
The case of Albany Phosphate Co. v. Hugger, 4 Ga. App. 771
(62 S.E. 533), is not controlling authority for reversal of the instant case, because in that case alleged damages because of loss rent was the subject of recovery, while in the instant case the $600 advanced by the prospective renters is the subject-matter of the suit. The facts involved in Georgia Power Light Co. v. Fruit Growers Express Co., 55 Ga. App. 520
(190 S.E. 669), differentiate that case from the instant one. And Code, § 2-907 does not control the facts of the instant case, as it is not shown that the defendants have been restored to the condition in which they were before the contract was made.
The statute of frauds has no application in the instant case, not being specially pleaded. Marks Powell v. Talmadge's Sons Co., 8 Ga. App. 557 (69 S.E. 1131); Powell Paving Co. ofNorth Carolina v. Scott, 47 Ga. App. 401 (170 S.E. 529). Moreover, the contract was fully executed by the defendants, and accepted by the plaintiff. This takes the case out of the statute of frauds.
The court did not err in overruling the motion for a new trial for any of the reasons assigned.
Judgment affirmed. MacIntyre, P. J., and Townsend, J.,concur.