## 29238. SWINSON *v.* JONES.

DECIDED FEBRUARY 6, 1942.

*Blackshear & Blackshear,* for plaintiff in error.

*J. Eugene Cook, Emory S. Baldwin Jr.,* contra.

SUTTON, J. M. H. Jones is the owner of lot of land No. 291, and E. E. Swinson is the owner of a portion of the adjoining lot, No. 296, both lots being in the first land district of Laurens County, Georgia. On the application of Jones, a processioning proceeding was had to establish the disputed line between the said tracts of land. The processioners found in favor of the line as contended for by Swinson, and Jones filed a protest to the return of the processioners. On the appeal in the superior court the jury returned a verdict in favor of the line as claimed by Jones, and Swinson

made a motion for new trial, which was overruled, and the exception here is to that judgment.

The plaintiff in error contends that the court erred in charging the jury as follows: "To establish a line by acquiescence, it must appear that the owners of the property to be affected acted in such a manner for a space of seven years, or made such declarations during the continuance of that period, as to show that the line claimed was the true line between the estates. In order that a line may be established by acquiescence for seven years by the acts or declarations of the owners of adjoining land, it is not essential that the acquiescence be manifested by a conventional agreement," because there was no evidence to warrant the charges and they were likely to and did mislead the jury.

We do not think that the court erred in so charging the jury. M. H. Jones testified that he had known the north corner between his land and the Swinson land for forty years, and it was the knoll that he now claims. J. A. Kelly testified that he purchased the timber from Swinson's predecessor in title, E. J. Tarpley, and that in 1911 he cut the timber on this land to the lines marked out for him by Tarpley, and that Tarpley pointed out the knoll (the northern corner claimed by Jones) as the northern end of his line. In 1913 he cut the timber off of the Jones land and Jones did not dispute that line, and Tarpley walked with him and pointed the line out to him. He further testified that he cut the Smith and Sarchett timber, and cut down to the knoll that was recognized by four different landowners as being the corner between the Smith and Sarchett lands on the north and the Jones place on the southwest and the Tarpley place on the southeast. R. A. Watson testified that in 1912 he and M. S. Jones, predecessor in title to M. H. Jones, walked the line to the knoll at the northern corner, and that Jones said "That is the corner of the Smith, Jones, and Tarpley lands." Neil Jones testified that he had been knowing the line between the Swinson property and the Jones property for about fifty years, and that the northern corner between these lands is the knoll, and that he also knew the south corner at the other end of the line; that about fifty years ago he went along with his father when his father was showing Mr. Link the line between the Jones and Tarpley lands and where to cut the timber to at that time. He testified that Mr. Link had bought the Tarpley timber and that

Mr. Tarpley knew where the line was, and the witness never heard any complaint from Tarpley about where he cut the timber. He testified that in 1894 Mr. Link cut the timber to the line now claimed by Jones, and that Tarpley owned the Swinson land from 1894 to 1918 and knew of the line that was pointed out by Jones, and allowed Link to cut the timber to that line; that J. A. Kelly bought Tarpley's timber and cut to the same line as being the line between the Jones land and the Tarpley land, and in 1913 Kelly purchased the timber on the Jones place and cut to the same line which had been marked out with the knowledge of Tarpley and Jones in 1894 and again in 1911.

There was evidence that when this line was first marked out in 1894 it was identified by chops and blazes on trees and stumps, and that this same line which runs from the knoll on the northern corner of the Jones and Tarpley lands in a southeasterly direction in a straight line to a sassafras stob in the eastern corner of the William Hester land is the line as contended for by M. H. Jones.

The Code, § 85-1602, provides that "acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." There is another well-established rule of law in this State, independently of the Code section just cited, that where the boundary line between adjoining landowners is indefinite or unascertained the coterminous proprietors may, by parol agreement, establish a dividing line, and if the agreement is accompanied by possession to the agreed line, or is otherwise duly executed, such agreement will be valid and binding and the line thus fixed will thereafter control their deeds. *Farr* v. *Woolfolk,* 118 *Ga.* 277 (45 S. E. 230) ; *Osteen* v. *Wynn,* 131 *Ga.* 209 (62 S. E. 37, 127 Am. St. R. 212). Under the rule last mentioned the agreement may be executed by the erection of physical monuments on the agreed line or by the marking of trees indicating the line, when this is done with the knowledge and mutual assent of the adjoining landowners. *Tietjen* v. *Dobson,* 170 *Ga.* 123, 124 (152 S. E. 222). But in order for a line to be established by acquiescence for seven years by the acts or declarations of the adjoining landowners, it is not essential that the acquiescence be manifested by a conventional agreement. *Sapp* v. *Odom,* 165 *Ga.* 437 (7) (141 S. E. 201). A line established by acquiescence for seven years by the acts or declarations of adjoining landowners is binding on the grantees of the coterminous

proprietors. *Booker* v. *Booker,* 36 *Ga. App.* 738 (138 S. E. 251); *Osteen* v. *Wynn,* supra.

There was evidence to authorize the court to submit to the jury the question of the establishment of a dividing line by acquiescence, and the court did not err in giving the charges complained of. The verdict was authorized under the law and the evidence, and the court did not err in overruling the motion for new trial.

*Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., dissenting. I think the court erred in submitting to the jury the question whether a line was established by acquiescence of the predecessors in title of the two present contestants. There was no evidence of actual possession by either predecessor in title up to the line established by the jury's verdict. Neither was there evidence of any agreement as to an *uncertain, unascertained,* or *disputed* line, either express or presumed conclusively from acquiescence by acts or declarations. To bind successors in title the fixing of a line must be done by an express agreement over a disputed line, or by proof of acts or declarations establishing a line which is uncertain, unascertained, or in dispute. Code §§ 85-1601, 85-1602; *Osteen* v. *Wynn,* 131 *Ga.* 209 (supra); *Farr* v. *Woolfolk,* 118 *Ga.* 277 (supra); *Taylor* v. *Board of Trustees of Glenlock Public School,* 185 *Ga.* 61 (194 S. E. 169). Simply to say that such a line must be established by agreement would suffice to cover the case because proving acquiescence for seven years by acts or declarations is simply conclusive and presumptive evidence of an agreement. An agreement fixing a line about which there is no dispute and which is not shown to have been unascertained or uncertain at the time the alleged agreement was made has one of two results; it either results in fixing the line as called for by the deeds of the parties, or other muniments of title, or it fixes a new line. In the latter case the agreement violates the statute of frauds. *Miller* v. *McGlaun,* 63 *Ga.* 435; *Farr* v. *Woolfolk,* supra. It is only when the agreement is with reference to a disputed, unascertained, or uncertain line that it is without the statute. *Miller* v. *McGlaun, Farr* v. *Woolfolk,* supra. In the present case there was no evidence of an express agreement and none is contended for by Jones. Neither was there evidence of acquiescence for seven years by the predecessors in title of Jones and Swinson. But even if there had been evidence of acquiescence there was no evidence that the line

was disputed, unascertained, or uncertain at the time of the alleged acquiescence, and under the authority of *Miller* v. *McGlaun*, supra, nothing was done about the line which would bind the successors in title of the parties who it is contended established the line by acquiescence. There was evidence of blazes and marks showing the line. It is not shown who made them, but even if they were made to carry out an agreement as to a line which was not unascertained, disputed, or uncertain the result would be the same, because in such a case to bind successors in title there must have been actual possession. *Miller* v. *McGlaun*, supra. There was no evidence of acts or declarations by the present contestants authorizing the establishment of the line fixed by the jury. The sole question under the evidence was where the true lot line was located.