35630.   RAILEY *et al. v.* HEATH.

Decided June 6, 1955.

*McCall & Griffis,* for plaintiffs in error.

*H. W. Lott,* contra.

Quillian, J.   A. B. Heath (whom we will refer to as the applicant) applied to the processioners of a district in Berrien County to trace and mark the line anew between his lands and those of Zack Railey, Allie Railey Miller, Sara Railey Brogdon, Willie Railey, Allie Railey Mixon, and Mamie Railey Gaskins (whom we will refer to as the protestants).   To the return of the processioners the protestants filed a protest, and the ordinary returned all the papers, including the plat made by the surveyor, with said protest, to the Clerk of the Superior Court of Berrien County.   The trial resulted in a verdict for the applicant.   The protestants filed a motion for new trial on the general grounds.   The motion was denied, and the protestants excepted.

On the trial the applicant introduced in evidence the return of the processioners together with the plat made by the county surveyor.   The applicant testified that he did not purchase his lands until 1944, and did not know the exact location of the disputed line.   To refute the contentions of the protestants that the disputed line had been acquiesced in by his predecessors in title by allowing the protestants and their predecessors in title to cut timber up to the line, he testified merely that he did not see any evidence of the timber having been cut and that the timber on his side of the line was about like that on the protestants' side.

One of the processioners testified in the applicant's behalf.   He gave an extensive explanation of how the processioners arrived at the location of the line marked by them.   He testified that they ran a line practically straight from an iron pin marking the corner at one end of the line to another at the other end of it, and for a portion of the way along the line they followed a fence that had·been "weeded" to by the proprietors on each side of

it, and apparently had stood long enough to be considered a line acquiesced in by both parties.

The protestants' witnesses testified in considerable detail that the line that lay along the course claimed by the protestants was the true line, and that the proprietors on each side of it acquiesced in its location for more than seven years, each cutting timber on their respective sides and up to the line for more than fifteen years. Some of the witnesses testified that they helped survey the line in 1911; and while the plat made at that time by the surveyor showed the line as contended by the applicant, it did not correctly show the line's location.

Where it is contended that a line was acquiesced in for more than seven years by contiguous landowners, allowing timber to be cut up to the line is one way in which acquiescence by conduct of the parties is shown. *Swinson* v. *Jones*, 66 *Ga. App.* 598 (18 S. E. 2d 646).

However, we are not prepared to hold that the evidence did not make an issue for the jury. The evidence that the iron-pin corners were at each end of the line was some evidence that the line originally lay in a straight line between them. Code § 85-1601. The fence referred to in the testimony of the processioners was some evidence that the line had been acquiesced in by the applicant and the protestants themselves.

The witnesses in the case, except the processioner, all appear to have been interested in its result. The applicant testified in his own behalf. For the protestants one of their number and their kinfolk testified for them. The fact that the processioner was without interest could be considered by the jury.

*Judgment affirmed. Gardner, P. J., Townsend, Carlisle, and Nichols, JJ., concur. Felton, C. J. dissents.*

FELTON, C. J., dissenting. The evidence was not sufficient to authorize a finding in favor of the line as contended for by the applicant. The testimony of the applicant's only witness whose testimony had any bearing on the facts was that of one of the processioners. His testimony showed conclusively that the straight line marked by the processioners was not one deliberately and designedly drawn between one marked point or corner at one end of the line to another marked point or corner at the other end of the line. It just so happened that the completed line was

about straight. It shows that part of the line was a straight line between two marked points, but that the rest of the line followed a fence which the evidence showed was not a part of the line. The provision of Code § 85-1601, which provides, "If the corners are established, and the lines not marked, a straight line, as required by the plat, shall be run," is not applicable to such cases as this, where landmarks are used in part or in whole in establishing a line. The processioner's testimony that the fence had been "weeded" by both parties, and that the fences looked like they had been there long enough to establish the line, is not sufficient to show that the fences constituted a part of the line under any theory of land-line law under the facts of this case. There was no competent evidence to show that the fence or fences were the line or any part of the line or that the fence or fences were ever considered by anyone as being the line or a part thereof. The whole of this witness's testimony shows that the line was run according to an old plat and by the fences referred to. The entire testimony of the processioner is as follows: "I am one of the processioners who processioned the land line in question. We, the processioners, gave the proper notice to the adjoining landowners of Mr. Heath. Using the plat of the processioners' return, we followed the original line as well as we could. We used the original line as far as we could and then veered our line to some fences that looked like had been there long enough to establish the line. In running the line we came to a flat place that we called a swamp. Mr. Railey mentioned the run of the branch at this point. I didn't see anything that looked like the run of the branch. The whole area down there was covered by water. We walked on logs and sometimes waded the water. I couldn't see anything that I considered to be the run of the branch. We ran north until we came to the fence that had been weeded by both parties. We came to an iron stob that had been there a long time. We followed the fence down to the other corner. Leaving the point 486 on the plat we went down in the flat on the woodland and left the cultivated land. The timber looked like it had been cut I would say 15 years or more. The timber on the east side of the branch was thicker. The timber that I saw cut was on the west side of the branch. The processioners were myself, Julian Paulk, W. H. Dorminy

and N. M. Harper. Mr. Dorminy is dead. I am the only processioner that is present. I remember that at the southeast corner there is an iron buggy stob corner that indicates the line between Mr. Heath and Mr. Railey's land. The head of the branch is near the corner. Starting at this buggy axle corner we went approximately north to an iron pin in Jim's Branch. We went practically straight from this point. The straight line that you ran was through good standing timber and was approximately straight. Mr. Railey claimed that the run of the branch was the line at this point. After we left the road this straight line was almost all the way through the branch, and Heath was on the west and Railey on the east of the straight line that we run through the timber. When we run through that timber I saw no landmarks where we run the line. I presume that there was plenty of trees along that line but no marks on them, none that I thought were landmarks. When we got to the north corner of the iron stob we run a line to the left. We ran our northwest course about 263 feet and then turned a little further west with the line and when we run this line, I don't know that we found any landmarks on any trees or anything indicating that there was a land-line where we run one. The reason that we run the lines where we did without any marks or chips on trees, we were following the fences as land lines and none of the processioners wanted to interfere with the fences. There was no fence north of the iron stob at the head of the branch, but after we got away from the fences we tried to follow the original line. We tried to follow the original line all around the tract. We started up at the land lot corner, which was the northwest corner where we started our processioning line and then we run to where we found the fence came to the Heath and Railey land and from the southeast corner of the Heath land we went north and Mr. Railey told us that the line veered back to the run of the branch and there was no run of the branch there. The branch was full of water but I did not see any run. The branch being full of water did not keep me from seeing the run. We run our line by the original plat as near as we could and that is why we run the line where we did. Mr. Railey was there telling us that the line didn't follow the plat. Mr. Metts was there and said that the original plat was right. The plat and other evidence was

the reason that we fixed the line there. Mr. John Metts is dead now. He didn't take us and show us that the iron stob was the line."

The evidence did not authorize the finding that the line as marked by the processioners was the correct line.